*385
 
 O’NIELL, Chief Justice.
 

 The plaintiffs are suing for a third interest in 1,070 acres of timber land in the Parish of Rapides. The suit was dismissed on exceptions of no cause or right of action, and of nonjoinder of necessary parties. On appeal the judgment was reversed and the case was remanded. See Long v. Chailan, 187 La. 507, 175 So. 42. The case was tried then on its merits and on a plea of estoppel and pleas of prescription of ten and thirty years. The judge maintained the pleas of prescription and rejected the plaintiffs’ demands. They are appealing from the decision.
 

 The land is described as the W% of the
 
 Ey2
 
 and all of the W% of Section 2, being 513.33 acres, the E% of the NE1/^ and all of the SE*4 of Section 3, being 256.67 acres, and about 300 acres in Section 10, being all of that part of the section on the north side or left descending bank of Bayou Cocodrie, except the E% of the NE14 of the section, all in T. 1 S., R. 1 E., in the Southwestern Land District of Louisiana. The lay of the land is seen from the fact that the three sections are regular sections, in place, Section 2 being adjacent to the east side and Section 10 to the south side of Section 3.
 

 Thomas O. Wells, who is one of the defendants, claims the 330 acres described as the W% of the NEj4 and all of the NWj4 of Section 2 and the E% of the NE% of Section 3.
 

 The Union Central Life Insurance Company, also a defendant in the suit, has a mortgage on the land claimed by Wells, the mortgage having been given by Wells’ author in title and having been assumed by Wells when he bought the land.
 

 Homer V. Smith, who also is a defendant in the suit, claims the 330 acres immediately south of and adjacent to the Wells tract, and described as the W% of the SE% and all of the SW% of Section 2 and the E% of the SEJ4 of Section 3, and the 330 acres in Section 10, being all of that part of the section on the north side or left descending bank of Bayou Cocodrie except the E% of the NE%. of the section.
 

 The Texas Company, another defendant in the suit, holds an oil and gas lease from Homer V. Smith on the 660 acres claimed by him.
 

 Woodward Wight & Company, another defendant, claims the 80 acres described as the
 
 Ey2
 
 of the SEx/4 of Section 3.
 

 Mrs. Alice C. Chailan was made a party defendant in the suit because the titles of the other defendants were derived from her; and the plaintiffs sued for annullment of her title.
 

 There are four plaintiffs in the case, each claiming a twelfth interest in the 1,070 acres of land by inheritance from Mrs. Lou Toler Cole Long. She married Henry F. Long on June 24, 1869, and died, intestate, on December 27, 1886, leaving two sons and four daughters, issue of her marriage with Henry F. Long. One of the plaintiffs, who is also named Henry F. Long, is a son, and two of them, namely, Mrs. Cora Long Gunter and Mrs. Bertha Long Edgar, are -daughters, of the deceased Henry F. Long and Lou Toler Cole Long. 1 The fourth one of the plaintiffs, namely, Elam W. Burnum, mar
 
 *387
 
 ried a daughter of the deceased Henry F. Long and Lou Toler Cole Long on August 18, 1897. The daughter died, intestate on, September 20, 1898, leaving a child of the marriage with Burnum. The child was born on September 4, 1898, and died on January 3, 1899. Burnum inherited from the child the one-sixth interest which the child had inherited from her mother in the succession of her mother, Mrs. Lou Toler Cole Long. Each of the four plaintiffs therefore inherited a sixth interest in whatever estate Mrs. Lou Toler Cole Long owned at the time of her death.
 

 The land in contest was bought by Henry F. Long from L. P. Noland on November 23, 1878, and thereby became the property of the matrimonial community then existing between Henry F. Long and Mrs. Lou Toler Cole Long. More than fourteen years after her death a firm named Stewart & Haas obtained a judgment against Henry F. Long for a debt which he had incurred after his wife’s death; and on March 2, 1901, Stewart & Haas had the sheriff to seize the 1,070 acres of land, now in contest, and sell it to satisfy the judgment against Long. The land was sold under an accurate description, at public auction, to a man named George W. Signor. He was in the business of making staves and crossties, and of buying timber or timber land for that purpose. After cutting all of the stave timber off of the 1,070 acres of land Signor sold the land to Mrs. Alice C. Chailan, on May 5, 1903. She was the daughter of Henry F. Long, issue of a* marriage previous to his marriage to Lou Toler Cole, and was married first to Bert Love and after his death to Henry Chailan. She sold to W. H. Lyles on March 8, 1904, the 330 acres, for which Thomas O. Wells holds title by mesne conveyances from Lyles. On April 12, 1910, Mrs. Chailan sold to Woodward Wight & Company the 80 acres described as the E% of the SEJ4 of Section 3; and on January 5, 1928, she sold to Homer V. Smith the 660 acres which he claims.
 

 The seizure and sale of the 1,070 acres of land by the sheriff, in 1901, to satisfy the debt which Henry F. Long had contracted after his wife’s death, was null as far as the half interest which the heirs of Mrs. Long had inherited was concerned. Hence the plaintiffs in this case own a third interest in the 1,070 acres of land unless the plea of estoppel or one of the pleas of prescription should prevail against them. The defendants contend that there is not enough evidence to identify the 1,070 acres of land in contest as the same land that Henry F. Long bought from L. P. Noland on November 23, 1878, and hence that there is no proof that the land in contest was bought during the period when Henry F. Long was married to Lou Toler Cole Long. The only doubt that the land in contest is the same land that Long bought from Noland on November 23, 1878, arises from the fact that in the sale by Noland to Long the land was said to have an area of 200 acres “more or less”. The land was described by its boundaries, that is, by the names of the owners of the' adjacent lands, in the sale from Noland to Long; and the description in that respect leaves no doubt that the
 
 *389
 
 land which Noland sold to Long consisted of the 1,070 acres claimed by the defendants in this suit. In the sale from Noland to Long the land was said to be the same land that Noland had bought from Robert L. and W. L. Tanner. The deed from the Tanners to Noland was destroyed by a fire that destroyed the court house in 1864; but there is other evidence showing that the land which Noland bought from Robert L. and W. L. Tanner is the land of which the one-third interest is in contest in this suit. Hence'there is no doubt that this land belonged to the matrimonial community between Henry F. Long and Mrs. Lou Toler Cole Long.
 

 .The defendants’ plea of estoppel is not well founded. It is based upon the fact that the plaintiffs once declared that they accepted unconditionally the succession of Henry F. Long, and upon the principle that an heir who -accepts unconditionally the succession of his ancestor is estopped to claim from a third person property which the ancestor sold under a warranty of title. That doctrine was announced as long ago as 1838, in Stokes v. Shackleford, 12 La. 170, and has been affirmed many times. But it is not applicable to a case where the property was seized and sold to pay a debt of the ancestor without his consent. Such a case is governed by article 2621 of the Civil Code and article 711 of the Code of Practice. Both articles declare that, if a person who buys property at forced sale made in the execution of a writ of fi. fa. or other writ is evicted from the property because it was not the property of the debtor, the buyer shall have the right to recover the price which he paid — his recourse being primarily against the debtor, whose debt was paid, but also against the creditor, whose claim was paid. Accordingly, if the heirs of Mrs. Lou Toler Cole Long had sued for and recovered from George W. Signor their half interest in the land which he bought at the sale which the sheriff made in execution of the judgment which Stewart & Haas held against Henry F. Long, George W. Signor would have had his recourse for half of the price which he paid to the sheriff — the recourse being primarily against Henry F. Long, whose debt was paid, but also against Stewart & Haas, whose claim was paid, with the price which Signor paid to the sheriff. But there was never any obligation on the part' of Henry F. Long, or on the part of his heirs, to warrant or defend the title to the half interest which these heirs inherited from their mother in the community property, and which was seized and sold for a debt which her succession did not owe.
 

 The plea of prescription of thirty years is not sustained by the evidence, because the land, being for the most part swamp or timber land, was never fenced or enclosed. The prescription of thirty years, by which a title to land may be acquired by a possessor who has neither deed nor good faith, cannot prevail beyond the area actually possessed, or beyond such an inclosure or such physical boundaries as will show the extent to which the possessor intends to possess. Rev.Civ. Code, art. 3503; Prevost’s Heirs v. Johnson, 9 Mart., O.S., 123; Ellis v. Prevost,
 
 *391
 
 19 La. 251; Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648; Continental Land & Fur Co. v. Lacoste, 192 La. 561, 188 So. 700; Little v. Barbe, 195 La. 1071, 198 So. 368.
 

 In article 3437 of the Civil Code it is said to be sufficient for a person intending to take possession of an estate to enter upon and occupy a part of the land, provided he intends to possess all that is included in the boundaries. But the word
 
 boundaries
 
 here means an inclosure or physical boundaries if the possession be without a deed, and it means the limits of the area described in the deed if the possession be by virtue of a deed. For it is declared in article 3498 that a possessor who holds a deed “is presumed to possess according to the title and to the full extent of its limits.” Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648.
 

 The defendants’ pleas of prescription of ten years are well founded upon the sale which the sheriff made to George W. Signor on March 2, 1901, and upon the sale made by Signor to Mrs. Alice C. Chailan on May 5, 1903, and upon the subsequent sales by which the defendants acquired title from Mrs. Chailan. There is no evidence to overcome the presumption that in each one of these sales the buyer acted in good faith. Mrs. Lou Toler Cole Long’s succession was never opened, nor was Henry F. Long’s succession ever opened. The fact that he was a married man at the time when he bought the land was not stated in the deed, or recorded anywhere; nor was it a matter of record that Mrs. Long had died before Stewart & Haas obtained their judgment in the execution of which the sheriff seized and sold the 1,070 acres of land. The plaintiffs in this suit alleged and they contend yet that there was a conspiracy between George W. Signor and Mrs. Chailan to defraud the heirs of Mrs. Lou Toler Cole Long, and that the sale by the sheriff to Signor and the sale by him to Mrs. Chailan were made in furtherance of the fraudulent scheme. The only evidence against Signor in that respect is the statement attributed to him that he bought the land “to help Captain Long out of a tight place”. That statement is not evidence of a conspiracy or of fraud, but indicates merely that Signor agreed to help Long out of his financial difficulties by allowing him or his daughter, Mrs. Chailan, to buy the land from Signor after he had taken the stave timber and crosstie timber off of it. All of which was in line with Signor’s business — buying timber or timber lands and converting ' the timber into staves or crossties. The plaintiffs allege that Mrs. Chailan knew of their interest in the land and connived with Signor to defraud them. But there is no proof of that. Mrs. Chailan lived in a far-away state continuously from her childhood— most of the time in Michigan and perhaps a part of the time in Oregon and a part of the time in Iowa — and she did not return' to Louisiana until more than a year after Signor had bought the land at the sheriff’s sale. It was admitted by one of the plaintiffs in her testimony in this suit that Mrs. Chailan had never seen her father for eighteen years when she returned to Louisiana, less than a year before she bought the land from Signor. The price
 
 *393
 
 which she paid was $2,026.31, which apparently was an adequate price. She received $1,000 of that sum as insurance on the life of her son, who died a short time before she returned to Louisiana; and she borrowed the balance of the price from a friend who was president of a bank in the State of Iowa. It is not at all likely that Mrs. Chailan would have paid out all of the money that she had and then borrowed more to buy this land if she had lacked faith in the title.
 

 It is argued that Homer V. Smith was not in good faith when he bought the 660 acres from Mrs. Chailan on January 5, 1928, because Smith had married a sister of the plaintiffs, and it is argued that he must have been familiar with the family relations and with the history of the land. But Smith was born and reared in Texas, and did not come to Louisiana until about three years before he bought the land; and there is no reason to believe that he knew of the defect in Mrs. Chailan’s title.
 

 George W. Signor took possession of the land immediately after he bought it, and held possession openly and publicly by felling timber and converting it into staves and crossties on the entire area of 1,070 acres, during 'all of the time that he owned the land. Mrs. Chailan took possession through her father, who managed the property for her. He built a sawmill and other structures on the land, and managed the mill and timber operations for Mrs. Chailan for several years. She sold 1,000 white' oak trees to a lumber company in 1905, and the company branded and cut and removed the timber. She sold stumpage to a partnership that cut and removed the timber in 1906; and sold timber to other parties who cut and removed it in 1908, in 1911, in 1912, in 1918, and in 1919. When W. H. Lyles bought the 330 acres of land now owned by Thomas O. Wells, Lyles built a sawmill and several cabins on the land, and operated the mill and cut and sawed the timber during the years 1904 and 1905, and he cleared and fenced and cultivated a considerable area of the land. Woodward Wight & Company had their 80 acres of timber cruised and estimated in 1919; and in 1925, which was eleven years before this suit was filed, Woodward Wight & Company sold the standing timber on the 80 acres of land to W. H. Lyles, who then went upon the land with a large crew of men and built roads and felled and removed the timber. These operations were carried on publicly and extended over a period exceeding five months. The sale of the 660 acres of land by Mrs. Chailan to Homer V. Smith was made less than ten years before this suit was filed. But Mrs. Chailan’s title was perfected by the prescription of ten years before she sold the land to Smith.
 

 The timber operations which were conducted by or for George W. Signor, Mrs. Chailan, W. H. Lyles, and Woodward Wight & Company, necessitated the construction of roads which were used in the timber operations, and which for the most part remain yet as evidence of the operations. Besides these acts of possession, the defendants and their authors in title, as far back as and including George W. Signor, paid the taxes on the land promptly every year during the period of their ownership.
 

 
 *395
 
 The cutting and removing of timber from open swamp land is a sufficient character of. possession to support the prescription of ten years if the operations are carried on frequently and for a considerable length of time and are accompanied by public signs showing an intention to possess the land', such as constructing and maintaining roads and other works, and paying the taxes on the land. Baker v. Towles’ Administratrix, 11 La. 432; Chamberlain v. Abadie, 48 La.Ann. 587, 19 So. 574; Industrial Lumber Co. v. Farque, 162 La. 793, 111 So. 166; Kees v. Louisiana Central Lumber Co., 183 La. 111, 162 So. 817. All of these cases are cited with approval in Martel v. Hunt, 195 La. 701, 197 So. 402.
 

 The plaintiffs contend that the prescription pleaded in this suit was interrupted by the filing of two previous suits by the two women who are plaintiffs in this suit. The former suits were founded upon the same cause of action that is alleged in this suit. In the first suit, which was brought against W. H. Lyles, each of the plaintiffs claimed a twelfth interest in the 330 acres of land which Lyles had bought from Mrs. Chailan and which is now claimed by Thomas O. Wells. The suit was filed on May 15, 1905, and was sent to the dead docket on February 19, 1908. No further proceeding was had in the suit until March 10, 1922. On that day a motion to dismiss the suit was filed and heard in open court and the suit was ordered dismissed as having been abandoned by the plaintiffs’ allowing five years to elapse without taking any steps in the prosecution of the suit. The record does not show- who filed the motion to dismiss, but the presumption is that it was filed by the defendant. The second suit was brought against Mrs. Alice C. Chailan, and each of the plaintiffs claimed a twelfth interest in all of the 1,070 acres of land. That suit was filed on October 1, 1919, and was sent to the dead docket on February 9, 1923. No further proceeding was had in the suit until May 29, 1936. On that day, on motion of an attorney representing Mrs. Chailan, the suit was ordered dismissed for having been abandoned by the plaintiffs’ allowing five years to elapse without taking any steps in the prosecution of the suit. The>attorney who presented and tried the motion for Mrs. Chailan is one of the attorneys representing her and other defendants in this suit. He had his name entered as attorney for Mrs. Chailan in the other suit, in open court, before presenting the motion to dismiss the suit. The present suit was filed on May 16, 1936; that is, thirteen days before the motion was made to dismiss the second suit.
 

 According to article 3518 of the Civil Code the filing of the previous suits had the effect of interrupting the prescription which is pleaded in this suit. But, according to article 3519, as amended by Act No. 107 of 1898, the effect of the plaintiffs’ allowing five years to elapse without taking any steps in the prosecution of their suits was to do away with the interruption of prescription — -so completely that “the interruption shall be considered as having never happened.”
 

 Article 3519 originally was in one paragraph, thus:
 

 “If the plaintiff in this case, after having made his demand, abandons or discontinues
 
 *397
 
 it, the interruption [of prescription] shall be considered as having never happened.”
 

 By the act of 1898 the following paragraph was added, viz.:
 

 “Whenever the plaintiff having 'made his demand shall at any time before obtaining final judgment allow five years to elapse without having taken any steps in the prosecution thereof, he shall be considered as having abandoned the same.” .
 

 The plaintiffs in this case contend that, notwithstanding the lapse of five years without any action being taken in the two previous suits, the suits have continued to' interrupt the prescription because the record does not show that either of the motions to dismiss was served upon the plaintiffs, or was tried contradictorily. The record shows that the motions to dismiss were tried in open court. Whether it is necessary to serve such a motion upon the plaintiff in the suit, in order that the judgment of dismissal shall be final, is a matter of no importance in determining whether the interruption of prescription, which is pleaded in a subsequent suit, has lost its effect by the plaintiff’s having allowed five years to elapse without taking any steps in the prosecution of the previous suit. According to the terms of the statute it is not the dismissal of the suit that causes it to lose the effect of interrupting prescription. What causes the interruption to “be considered as having never happened” is the plaintiff’s allowing five years to elapse without taking any steps in the prosecution of his suit. The allowing of five years to elapse without taking any steps in the prosecution of a suit constitutes an abandonment of the suit, and the effect of the abandonment is that, “the interruption [of prescription] shall be considered as having never happened.” It is not necessary for the defendant to have the. suit dismissed or stricken from the docket in order that the abandonment may destroy whatever effect the suit may have had in the way of interrupting prescription. When the- five years of inaction on the part of the plaintiff have expired, the suit becomes as ineffectual so far as it may have interrupted prescription as if the interruption had “never happened”. Charbonnet v. State Realty Co., 155 La. 1044, 99 So. 865; Losch v. Greco, 173 La. 223, 136 So. 572; Succession of Bonnette, 188 La. 297, 176 So. 397. In Losch v. Greco, supra [173 La. 223, 136 So. 573] we quoted a pertinent paragraph from the Charbonnet case, and added an expression of approval, thus:
 

 “In Charbonnet v. State Realty Co., 155 La. [1044] 1049, 99 So. 865, 867, it was said:
 

 “ ‘The amended article (3519 of the Civil Code), when read in connection with the subject-matter of the section and of the article 3518 immediately preceding it, clearly means that a suit which has been abandoned for nonaction during a period of five years does not constitute a legal interruption to the course of prescription, and its effect is to leáve a plaintiff in the same position that he would occupy if he had not instituted the suit.’
 

 “In other words, the abandonment which results as a legal consequence of a plaintiff’s failure to take any action in his suit during a period of five years merely bars
 
 *399
 
 his right to continue with the prosecution of that suit. It does not prevent his bringing another suit for the same cause of action ; but if he brings another suit for the same cause of action, the question whether his right of action is barred by prescription must be determined as if no suit had been theretofore brought.”
 

 The most important observation in the Charbonnet case and in the Losch case is that article 3519 is in that section of the Code which is entitled “Of The Cause's Which Interrupt Prescription”, and that the article deals only with the subject of interruption of prescription. There is nothing said in the article about the defendant’s having the right to have the suit dismissed when the plaintiff has allowed five years to elapse without taking any steps in the prosecution of the suit. It was declared in Lockhart v. Lockhart, 113 La. 872, 37 So. 860, and again in Teutonia Loan & Building Co. v. Connolly, 133 La. 401, 63 So. 63, that the reason why the defendant had the right to have the suit dismissed at the expiration of the five years of inaction on the part of the plaintiff was that the plaintiff then could not take any further action in the suit unless the defendant waived the benefit of the abandonment of the suit. In the Teutonia case it was said also that the dismissing of the suit on the ground 'of its having been abandoned merely removed it from the docket and had nothing whatever to do with the question whether the suit had the effect of interrupting prescription.
 

 The plaintiffs in this suit do not contend that the two of them who were the plaintiffs in the two previous suits might have prevented the dismissal of either of those suits if they had been served with a copy of the motion to dismiss. They do not dispute that the minutes of the court show that more than five years of inaction on the part of the plaintiffs in each suit had elapsed when the suit was adjudged abandoned and ordered dismissed. The plaintiffs’ filing the second suit was an affirmance of the fact that the first suit was abandoned, and their filing the third suit was an affirmance of the fact that the second suit was abandoned, even though the second suit had not been dismissed when the third suit was filed.
 

 The judgment is affirmed.