CAVANAUGH, Judge.
This is a petitory action brought by the plaintiffs, children and grandchildren of Joseph Callahan, against the defendant to recover as his heirs an undivided one-half interest in the following described land:
“A certain tract of land situated on the left bank of Bayou Lafourche, about forty three (43) miles below the Town of Thibodaux, measuring two and one third (2ys) arpents front on said Bayou Lafourche by a depth of forty (40) arpents; bounded above by land of Raphael Gaude, now or formerly and bounded below by land of Simon Abraham now or formerly, together with all improvements thereon, rights, ways, privileges, advantages and servi-tudes attached thereto and belonging.”
It is alleged that the property was community property acquired in the name of Marie Anastasie Gaude on January 22, 1881, and that it formed a part of the community of acquets and gains existing between her and her husband, Joseph Callahan. Plaintiffs Heloise Callahan, wife of Lufroid Pitre, Emile Constant Callahan, Louis P. Callahan, Joseph T. Callahan, Leon A. Callahan, Pierre Lauris Callahan, Josephine Callahan Gaudet and Antoine B. Callahan, claim each an undivided %oth interest in the property; Rose Danos Savoie, Adrien M. Danos, Joseph P. Danos, Louise Danos Rebstock, Eugenie Alzire Danos, Georgina D. Eymard, Albruge Danos, Athose A. Danos, claim an undivided ^soth interest each as the heirs of Marie Helen Callahan, daughter of Joseph Callahan, who died intestate on September 13, 1929; Ma *106 rie Callahan Collin, Eade J. Callahan, Esa (alias “Hazel”) Callahan Terrebonne and Laurine Callahan, claim an undivided Ysoth interest each as the children and heirs of Jedeon Callahan, son of Joseph Callahan. The plaintiffs allege that they have been recognized as the sole surviving heirs and placed in possession of the property above described in the proportions hereinabove set out and that the property is owned by them in division with the defendant, and that the defendant has been in possession of said property for a period of more than ten years preceding the institution of this suit; and that his possession has been in bad faith.
The facts reflected by the petition show that Joseph Callahan, husband of Marie Gaude, died on October 1, 1905 and was survived by his widow, Marie Anastasie Gaude, and the first eight named plaintiffs and Marie Helen Callahan, sister of plaintiffs, who died on September 13, 1929; and Jedeon Callahan, their brother, who died on February 10, 1918.
Plaintiffs also attack a Sheriff’s adjudication and sale of the property to the defendant dated October 5, 1925, and allege that it is an absolute nullity insofar as it purports to adjudicate the interest petitioners inherited in the property from Joseph Callahan. The basis of this attack is that it was a sale of their property to pay a debt of their mother for which they were not responsible. It is further alleged that after the community was dissolved by the death of Joseph Callahan, his widow, Marie An-astasie Gaude, on February 21, 1910, executed a note in the sum of $1,100 payable to herself and endorsed in blank, which note was secured by a mortgage upon the following described lands, to-wit:
“A certain tract of land situated in the Parish of Lafourche at about 41 miles below the Town of Thibodaux, measuring one (1) arpent front on said Bayou Lafourche by forty (40) arpents in depth; bounded above by the lands of the purchaser herein and below by the land belonging to Ferdinand Aguil-lar; together with all buildings and improvements thereon.”
which was a part of the lands described in paragraph 1. That on August 27, 1913, William Fick, claiming to be the holder and owner of the note, foreclosed his mortgage by executory process and sold the last described property to the defendant as agent for Emma Guidry, widow of Julien Lefort, Eliska Lefort, wife of Joseph O. Authement and Lucretia Lefort, wife of Herbert Ducuers, for the price and sum of $400.
That the defendant on April 28, 1915, claiming to be the assignee of all of the right, title and interest of William Fick in the note and mortgage granted by Marie Anastasie Gaude, instituted a proceeding in the District Court of Lafourche Parish entitled Joseph Authement v. Mrs. Marie Gaude, widow of Joseph Callahan, No. 4589, and obtained a judgment against her for the balance due on said note and mortgage in the sum of $1,506.36, subject to a remittitur in the amount of $111.50. Marie Gaude died sometime between May 21, 1915 and May 16, 1925 (the exact date is not reflected by the proceedings), but on May 16, 1925, the defendant filed a -petition in suit No. 4589 to revive the judgment he had previously obtained against their mother and grandmother. The suit for the revival of the judgment or the proceedings showing who was actually made parties to the suit are not attached to plaintiffs’ petition but from the copy of the Sheriff’s Deed attached to the petition and which is made a part of the petition it would appear that all of the plaintiffs had notice of the seizure of their property. Three of the minor heirs of Jedeon Callahan, viz.: Hays, Hazel and Lorine Callahan were cited through Taylor Beattie, attorney and special tutor ad hoc.
The defendant excepted to the plaintiffs’ petition on the ground that it did not set forth a cause or right of action and it is especially alleged in the exception “that plaintiffs’ petition disclose that the plaintiffs have been divested of any interest whatsoever of the property in dispute and that title to the property in dispute has been vested in the defendant”.
The lower court after hearing argument of counsel on the exception requested mem- *107 oranda of written authority to be submitted and for reasons orally assigned rendered judgment in favor of the defendant, plaintiff in the exception, sustaining the exception of no cause or right of action, and dismissing plaintiffs’ suit. The district judge was then requested by plaintiffs to file written reasons for his judgment. The judgment was rendered on February 5, 19S4, and a formal judgment was read and signed on February IS, 1954.
The plaintiffs have appealed from the judgment dismissing their suit and contend here that the exception of no cause and no right of action should have been overruled or that they should have been permitted to have amended their petition if the exception was leveled at the insufficiency of the allegations contained in the petition. It is elementary for the purpose of the trial of an exception of no cause of action that the allegations of fact contained in the petition must be accepted as true and on a trial of an exception of no cause of action evidence is not to be admitted. The rule is different as to an exception of no right of action but the pleader in an exception of no right of action if he desires to controvert the facts alleged in the petition, he must allege facts in his exception of no right of action and then the Court is permitted to hear evidence to controvert the truth or establish the falsity of the allegations. The pleading here and on which the Court based its judgment is whether or not the plaintiffs by the allegations contained in their petition or by this proceeding have accepted the succession of their mother and grandmother, Marie Anastasie Gaude, or whether or not the proceeding to revive the judgment rendered against their mother and grandmother and on which the Sheriff’s adjudication to the defendant is predicated was such a proceeding as to obtain a personal judgment against them and for which their property would respond under execution.
The district judge held that when plaintiffs who were cited in the suit brought against them to revive the judgment obtained by defendant against their mother had the effect bf converting it into a personal judgment against them so a writ of fieri facias could issue and under which any property belonging to plaintiffs could be seized and sold. The court below has referred to no law or case authorizing suchi holding. The facts recited in the petition show that the community between Joseph Callahan and Marie Gaude was dissolved by the death of Joseph Callahan in 1905.. Immediately upon his death his undividedi one-half interest in the property immediately vested in his heirs. The property was then owned by the plaintiffs as heirs of their father. Their mother owned an undivided one-half interest in the property and also had the usufruct of the entire property as the surviving widow. She could make no sale or mortgage of the property affecting plaintiffs’ undivided one-half interest without their joinder. The judgment obtained by the defendant against Marie Gaude was against her personally and for an obligation coming into existence five years after the community had been dissolved. The revival of the judgment by citing and serving plaintiffs as her heirs did not make them personally liable for the debt evidenced by the judgment against her.
Defendant and plaintiff in the exception contends that plaintiffs by permitting the judgment of revival to go against them by default when they were cited as heirs of their mother had the effect of making them liable personally for her obligation and cite in support of their contention, LSA-Civil Code Article 1000, which reads:
“The person called to the succession does an act, which makes him liable as heir, if, when cited before a court of justice as heir for a debt of the deceased, he suffers judgment to be given against him in that capacity, without claiming the benefit of inventory, or renouncing the succession.”
The jurisprudence is that this article must be read in connection with Article 1055 of the LSA-Civil Code and Articles 977 and 979 of the Code of Practice, prescribing the *108 method by which an heir may be compelled to elect to accept or renounce the succession. Schreiber v. Beer’s Widow & Heirs, 150 La. 676, 91 So. 149. The question is fully discussed in that case and contemplates involuntary action on the part of the heir and provides a remedy and proceeding1 for a creditor to either make the heir accept or reject the succession. The question was again reviewed and discussed and the purport of the holding of the court in the Schreiber case was discussed in Iberville Bank & Trust Co. v. Zito, 169 La. 421, 125 So. 435.
The only purpose of bringing a suit to revive a money judgment under Article 3547 of the LSA-Civil Code is to prevent the judgment from becoming prescribed. That article provides that any party interested in any judgment may have the same revived at any time before it is prescribed, by having a citation issued according to law, to the defendant or his representative, from the Court which rendered the judgment, unless defendant or his representative show good cause why the judgment should not be revived, and if such defendant be absent and not represented, the Court may appoint a curator ad hoc to represent him in the proceeding upon which curator ad hoc the citation shall be served. It does not make it a personal judgment against the heirs cited or alter the effect thereof. Franek v. Turner, 164 La. 532, 114 So. 148; Washington v. Palmer, 213 La. 79, 34 So.2d 382; Blanchard v. Smith, La.App., 45 So.2d 527; Folger & Son v. Slaughter, 33 La.Ann. 341; Bertron v. Stewart, 43 La.Ann. 1171, 10 So. 295.
The trial judge in his written opinion also made, this observation:
“It is alleged in plaintiffs’ petition that the original mortgage granted by Mrs. Callahan was her separate obligation and could not affect the property which the plaintiffs inherited from their father. Assuming this to be true, it must still be noted that the actual title of the defendant does not necessarily depend upon the mortgage of Mrs. Callahan but upon the judgment and sale, and if the judgment is valid, any defects in the mortgage would be immaterial. (See Ker v. Evershed, 41 La.Ann. 15 [6 So. 566]).”
The answer to this statement is that who has the actual title will depend on a decision on the merits.
The judge also says that in plaintiffs’ argument on the exception that they did not question the validity of the judgment of revival obtained against the heirs of Mrs. Callahan, nor the writ upon which the property in dispute was seized and sold but that they argued that the interest which plaintiffs inherited from their father could not be seized and sold. He further states that the petition clearly shows that the plaintiffs have accepted unconditionally the succession of their mother, Mrs. Callahan, or Marie Anastasie Gaude, 'and that they recognize that their mother was the owner of a half interest in the property by this suit claiming their father’s interest and they have accepted unconditionally the succession of their mother and that they recognize that the defendant is the owner of a one-half interest in the property.
The plaintiffs in this suit could not be bound by any warranty obligation of their ancestor under the facts alleged in this suit because there was no warranty obligation on the part of their mother to the property involved in this suit. She did not mortgage the property. A deficiency judgment was obtained against her and a forced sale of the property was made by the Sheriff to the defendant. She did not voluntarily sell the interest of plaintiffs in the property and she did not voluntarily sell her interest. It was a forced sale by which the defendant acquired title. There was never any obligation on the part of the judgment debtor, Marie Anastasie Gaude, mother of the plaintiffs, or on the part of the plaintiffs to warrant or defend the title to the one-half interest in this property which they inherited from their father in the community property which was seized and sold for a debt which his succession did not owe. Long v. Chailan, *109 196 La. 380, 199 So. 222, 224. The Court said in this case:
“The defendants’ plea of estoppel is not well founded. It is based upon the fact that the plaintiffs once declared that they accepted unconditionally the succession of Henry F. Long, and upon the principle that an heir who accepts unconditionally the succession of his ancestor is estopped to claim from a third person property which the ancestor sold under a warranty of title. That doctrine was announced as long ago as 1838, in Stokes v. Shackleford, 12 La. 170, and has been affirmed many times. But it is not applicable to a case where the property was seized and sold to pay a debt of the ancestor without his consent. Such a case is governed by article 2621 of the Civil Code and article 711 of the Code of Practice. Both articles declare that, if a person who buys property at forced sale made in the execution of a writ of fi. fa. or other writ is evicted from the property because it was not the property of the debtor, the buyer shall have the right to recover the price which he paid — his recourse being primarily against the debtor, whose debt was paid, but also against the creditor, whose claim was paid. Accordingly, if the heirs of Mrs. Lou Toler Cole Long had sued for and recovered from George W. Signor their half interest in the land which he bought at the sale which the sheriff made in execution of the judgment which Stewart & Haas held against Henry F. Long, George W. Signor would have had his recourse for half of the price which he paid to the sheriff — the recourse being primarily against Henry F. Long, whose debt was paid, but also against Stewart & Haas, whose claim was paid, with the price which Signor paid to the sheriff. But there was never any obligation on the part of Henry F. Long, or on the part of his heirs, to warrant or defend the title to the half interest which these heirs inherited from their mother in the community property, and which was seized and sold for a debt which her succession did not owe.” See also Long v. Chailan, 187 La. 507, 175 So. 42.
We have read and considered the cases of Addison v. Kirby Lumber Corp., La.App., 3 So.2d 199; Cook v. Martin, 188 La. 1063, 178 So. 881; Soule v. West, 185 La. 655, 170 So. 26; Griffing v. Taft, 151 La. 442, 91 So. 832; Berry v. Wagner, 151 La. 456, 91 So. 837. Those cases deal with the voluntary acts of an heir by which he either expressly or tacitly committed an act evidencing an acceptance of the succession of the ancestor which he could not have done except in his quality as an heir and in which the court held that by either going in possession of the property of the ancestor or accepting its benefits he assumed the obligation of warranty of the ancestor. They are not apposite here.
 The question of whether an heir accepts a succession expressly or tacitly is a question of fact to be tried on the merits of the case, or on an affirmative plea properly urged by the party invoicing the defense unless the petition factually shows the heirs 'are asserting a right which the ancestor under whom they claim could not assert. The plaintiffs in this suit claim no right under their mother or grandmother to the property. The right is asserted as heirs of their father and grandfather.
For the reasons assigned the judgment of the district court sustaining the exception of no cause or right of action is reversed and the exception is overruled and the case is remanded to the district court to be proceeded with according to law.