The plaintiffs, John Kees and Commodore Kees, claim title to 160 acres of land, described as S.E. 1/4 of S.E. 1/4 of section 11, and W. 1/2 of N.E. 1/4 and N.E. 1/4 of N.E. 1/4 of section 14, in Tp. 11 N., R. 2 E. The tract of 20 acres described as N. 1/2 of N.E. 1/4 of N.E. 1/4 of section 14 was supposed to be claimed by Lee Starks and Victoria Cross, who were made defendants in the suit. Lee Starks and Victoria Cross allowed judgment to go against them by default, declaring the plaintiffs to be the owners of that part of the land sued for. The other defendant, Louisiana Central Lumber Company, claimed the remaining area, 140 acres, and pleaded the prescription of 10 years, both acquirendi causa and liberandi causa. The lumber company claimed also an older title to the timber on that part of the land described at S.E. 1/4 of S.E. 1/4 of *Page 114 
section 11 and N. 1/2 of N.E. 1/4 of section 14. The lumber company pleaded the prescription of one year against the claim of the plaintiffs for the value of the timber which the lumber company had taken from the W. 1/2 of N.E. 1/4 of section 14. The judge of the district court gave judgment for the lumber company, sustaining the plea of prescription of 10 years, acquirendi causa, and rejecting the plaintiffs' demands. They have appealed from the decision. The lumber company, answering the appeal, urges again the other pleas of prescription.
The whole tract, 160 acres, was acquired by the plaintiffs' parents, Ransom Kees and Sylvia Cross Kees, by patent from the United States, dated the 14th of February, 1900, under a homestead entry. Ransom Kees died, intestate, on the 9th of March, 1900, and the widow, Sylvia Cross Kees, died, intestate, on the 9th of October, that year. Their only heirs were the two sons, John, who was 11 years of age, and Commodore, who was 9 years of age, when the parents died. It appears that Sylvia Cross Kees had a son named Lawyer Williams, who was born before she was married to Ransom Kees; but it was admitted by the lumber company, in answering this suit and again on the trial of the case, that the plaintiffs, John and Commodore Kees, were the only heirs at law of their parents, Ransom Kees and Sylvia Cross Kees.
On the 10th of May, 1902, George Cross, a maternal uncle of John and Commodore *Page 115 
Kees, represented by an attorney at law, filed a petition in court to be appointed tutor of the minor children, John and Commodore Kees, and to have an undertutor appointed. The judge appointed George Cross tutor and Elias Johnson undertutor. In his petition to be appointed tutor, George Cross declared that Lawyer Williams was a son of Sylvia Cross Kees, by a marriage previous to her marriage to Ransom Kees, and Cross represented, erroneously, that Lawyer Williams inherited one-half, and hence that John and Commodore Kees inherited only one-half, of the estate of Ransom Kees and Sylvia Cross Kees. If lawyer Williams had been a legitimate son of Sylvia Cross Kees he would have inherited only one-sixth interest, that is, one-third of her half interest, in the 160 acres of land which belonged to the matrimonial community between Ransom Kees and Sylvia Cross Kees. In the petition for the appointment of the tutor, and in the inventory of the estate, the land was described, erroneously, as S. 1/2 of S.E. 1/4 of section 11, and N. 1/2 of N.E. 1/4 of section 14. That description contains 160 acres, but it includes the 40 acres described as S.W. 1/4 of S.E. 1/4 of section 11, which did not belong to the Kees estate, and omits the 40 acres described as S.W. 1/4 of N.E. 1/4 of section 14, which did belong to the Kees estate. In the inventory, John and Commodore Kees were said to own only an undivided half interest in the 160 acres of land, erroneously described, and their *Page 116 
interest was appraised at $80. On the same day on which the inventory was filed, May 10, 1902, George Cross, as tutor, applied for and obtained an order of court to sell the minor children's interest in the standing timber on the 160 acres of land, on the recommendation of a family meeting. The tutor alleged that the minor children had a half interest and that their half-brother, Lawyer Williams, owned the other half interest in the timber. On the recommendation of the family meeting the tutor sold the timber to S.H. Brown, for $81.25, supposed to be at the rate of 50 cents per thousand feet stumpage. In the deed the land was described again erroneously as S. 1/2 of S.E. 1/4 of section 11, and N. 1/2 of N.E. 1/4 of section 14. The sale was made on the same day that Cross had applied to be appointed tutor of the children. Two days later Lawyer Williams sold to S.H. Brown, for $81.25, what the parties declared to be Williams' half interest in the standing timber, again describing the land as S. 1/2 of S.E. 1/4 of section 11 and N. 1/2 of N.E. 1/4 of section 14. On the 13th of December, 1902, S.H. Brown sold the standing timber on the land (describing it again erroneously as S. 1/2 of S.E. 1/4 of section 11 and N. 1/2 of N.E. 1/4 of section 14), together with the standing timber on other land, to the Standard Lumber Company; and on the 25th of September, 1906, the Standard Lumber Company sold the standing timber on the same land, together with other property, *Page 117 
to the Louisiana Central Lumber Company.
On the 12th of May, 1903, Lee Starks and George Cross, the latter acting for himself and not as tutor for the Kees children, procured a deed from Lawyer Williams for the 80 acres of land described as S.E. 1/4 of S.E. 1/4 of section 11, and N.E. 1/4 of N.E. 1/4 of section 14, for $20 cash. That tract was the east half of the tract of 160 acres belonging to John and Commodore Kees. We call it the east half of the tract of 160 acres because a line drawn north and south through the center of S.E. 1/4 of section 11 and N.E. 1/4 of section 14 would have divided the original tract of 160 acres into two tracts of 80 acres each, with the south half of the eastern 80 acres adjoining the north half of the western 80 acres. It is, of course, not possible that Lee Starks or George Cross was acting in good faith, or in the belief that they were acquiring a valid title, in buying the S.E. 1/4 of S.E. 1/4 of section 11 and N.E. 1/4 of N.E. 1/4 of section 14 from Lawyer Williams. If Lawyer Williams had been a legitimate son of Sylvia Cross Kees, by a marriage previous to her marriage to Ransom Kees, Lawyer Williams, as we have said, would have inherited only a third interest in his mother's half of the tract of 160 acres, or an undivided sixth interest in the whole tract. There was never an act of partition or division of the 160 acres of land between John and Commodore Kees on the one side and *Page 118 
Lawyer Williams on the other side. In fact it is admitted by the parties to this suit that Lawyer Williams had no interest in the estate of Ransom Kees or Sylvia Cross Kees; and there is no reason to doubt that George Cross, who was a brother of Sylvia Cross Kees, knew that John and Commodore Kees were her only legitimate children.
On the 6th of June, 1903, John Kees and Commodore Kees, and George Cross, as tutor, and Elias Johnson as undertutor, signed a deed purporting to sell to J.C. Harper, for $20 cash, the 80 acres of land described as W. 1/2 of N.E. 1/4 of section 14, T. 11 N., R. 2 E., which was the west half of the tract of 160 acres which John and Commodore Kees had inherited from their parents. The sale to Harper had no validity whatever, because John and Commodore Kees were minors, John being about 14 years of age and Commodore about 12, and because their tutor had no authority from the court to sell their land. The tutorship proceedings were irregular in other respects; for example, George Cross did not give a bond as tutor; Elias Johnson, the undertutor, served as one of the two appraisers in making the inventory of the estate inherited by the two children; and in making the appraisement the appraisers gave the children credit for only half of what belonged to them.
On the 17th of December, 1906, J.C. Harper sold the 80 acres described as W. *Page 119 
1/2 of N.E. 1/4 of section 14 to the Louisiana Central Lumber Company for $20 cash.
On the 15th of December, 1909, Lee Starks and George Cross sold the 40 acres described as S.E. 1/4 of S.E. 1/4 of section 11 to the Louisiana Central Lumber Company for $50 cash.
On the 26th of January, 1915, George Cross sold the 20 acres described as S. 1/2 of N.E. 1/4 of N.E. 1/4 of section 14 to the Louisiana Central Lumber Company for $40 cash. It is said in the brief for John and Commodore Kees, as well as in the brief for the Louisiana Central Lumber Company, that both Lee Starks and George Cross sold this tract of 20 acres to the Louisiana Central Lumber Company on the 26th of January, 1915; but the deed purports to be a deed from George Cross only, and is signed by George Cross only. There is no record of a partition or division between Lee Starks and George Cross, of the 80 acres which they pretended to buy from Lawyer Williams. Hence George Cross could not have conveyed to the Louisiana Central Lumber Company a title for more than an undivided half interest in the 20 acres described as S. 1/2 of N.E. 1/4 of N.E. 1/4 of section 14, even if the sale made by Lawyer Williams to Lee Starks and George Cross had conveyed a valid title.
The lumber company virtually concedes that the company did not acquire a valid title by purchase of any part of the land *Page 120 
now claimed by the company. The company did not acquire a valid title to the 80 acres bought from J.C. Harper, described as W. 1/2 of N.E. 1/4 of section 14, because Harper did not acquire a valid title from the minor children, John and Commodore Kees. The lumber company did not acquire a valid title to the 40 acres bought from Lee Starks and George Cross, described as S.E. 1/4 of S.E. 1/4 of section 11, because Lee Starks and George Cross did not acquire a valid title from Lawyer Williams. And, for the same reason, the lumber company did not acquire a valid title to the 20 acres (even for a half interest in the 20 acres) bought from George Cross, described as S. 1/2 of N.E. 1/4 of N.E. 1/4 of section 14. The lumber company, therefore, relies entirely upon the pleas of prescription.
Referring now to the 80 acres described as W. 1/2 of N.E. 1/4 of section 14, which the lumber company bought from J.C. Harper on the 17th of December, 1906, we concur in the opinion of the judge of the district court that the plea of prescription of 10 years, acquirendi causa, is well founded. It is true that Harper had not a valid title, or one which could have served as a basis for the prescription of 10 years because Harper bought the land from the two children, of the age of 14 and 12 years, respectively, and from their tutor, who had no authority whatever to sell their land; hence Harper did not buy the land in good faith. But the evidence in the record does not *Page 121 
destroy the presumption that the lumber company was in good faith in buying the land from Harper. He was an attorney at law, and represented to the lumber company that he owned the land, which he proposed to sell to the company. The member of the company, to whom the offer was made, testified that he believed that Harper owned the land. All that is necessary to constitute possession in good faith is that the possession shall be by virtue of a title valid in form and acquired from one whom the possessor believed to be the owner of the property. It is argued for the appellants that the lumber company must have known that Harper had not a valid title to this land, because the company had the titles examined when the company bought the timber from the Standard Lumber Company. But the record shows that the sale by which the Louisiana Central Lumber Company bought the timber on the S. 1/2 of S.E. 1/4 of section 11 and N. 1/2 of N.E. 1/4 of section 14 was a sale of a very large amount of property, at the price of $200,000; and that the Louisiana Central Lumber Company depended upon the examinations of titles which had been made for the Standard Lumber Company. There is no inference, in that respect, that any officer or member of the Louisiana Central Lumber Company had knowledge of a defect in J.C. Harper's title for the 80 acres of land. The member of the company, with whom Harper negotiated, testified that he had no knowledge or suspicion *Page 122 
of an adverse claim to the land. The company took actual possession of the land in March, 1921, by constructing a tram railroad across the land, from south to north, and by felling and removing all of the merchantable pine timber from the land. All of the timber that the company took from the land claimed by the plaintiffs in this suit was taken from the W. 1/2 of N.E. 1/4 of section 14. The felling and hauling of the timber was commenced in March and was continued until some time in May, 1921; and thereafter the railroad track remained on the land and was used by the company for hauling other timber belonging to the company, for a period of about a year. The log trains of the company traveled over the road, from one end of the 80 acres of land to the other end, every day, and not less often than twice every day. Our opinion is that the natural possession, or physical possession, which the lumber company had, of this tract of 80 acres, was sufficient, under articles 3429 and 3487 of the Civil Code, to give effect to the civil possession, resulting from the so-called "just title." Our conclusion, therefore, is that the judgment sustaining the plea of prescription of 10 years, as to the 80 acres of land described as W. 1/2 of N.E. 1/4 of section 14, is correct.
The Louisiana Central Lumber Company, however, has never had natural or physical possession of the 40 acres of land described as S.E. 1/4 of S.E. 1/4 *Page 123 
of section 11 or of the 20 acres of land described as S. 1/2 of N.E. 1/4 of N.E. 1/4 of section 14. These two tracts form a part of the tract of 80 acres which George Cross and his associate, Lee Starks, bought from Lawyer Williams. Lee Starks, as far as the record shows, never took possession of any part of the land. George Cross had possession of the tract of 20 acres described as N. 1/2 of N.E. 1/4 of N.E. 1/4 of section 14, which was not sold to the Louisiana Central Lumber Company, and which the company has never claimed. That is the tract of 20 acres for which the plaintiffs here sued Lee Starks and Victoria Cross, sole heir of George Cross, deceased, and for which the plaintiffs have obtained a judgment by default. George Cross built a cabin on this tract of 20 acres, and fenced in and cultivated 10 or 12 acres of the land, and he resided on the land continuously from 1908, or about that time, until his death, about 1928 or 1930. But George Cross was not a possessor in good faith, because he was the tutor of the minor children who owned the land when he bought it from Lawyer Williams. George Cross was sufficiently informed of the facts to know that Lawyer Williams did not own the 80 acres of land which he sold to George Cross and Lee Starks. The lumber company claims that the possession which George Cross had, of the 20 acres which he retained, inured to the benefit of the company because the 20 acres formed a part of the tract of 80 *Page 124 
acres, of which the company bought 60 acres. There is no merit, however, in the proposition that the possession which George Cross retained, of the tract of 20 acres which he did not sell to the lumber company, should continue as a manifestation of possession of the land which George Cross did sell to the lumber company. If George Cross had been a possessor in good faith, and if he had had a title for all instead of an undivided half of the 80 acres of land, his title would have been perfected by the prescription of 10 years before he made the sale to the lumber company. But he had no title by prescription to convey to the lumber company.
The possession which the lumber company had of the tract of 80 acres described as W. 1/2 of N.E. 1/4 of section 14 did not constitute possession of the 20 acres described as S. 1/2 of N.E. 1/4 of N.E. 1/4 of section 14, because this tract of 20 acres was not held under the same title under which the lumber company possessed the tract of 80 acres; and the company's possession of the W. 1/2 of N.E. 1/4 of section 14 did not constitute possession of the S.E. 1/4 of S.E. 1/4 of section 11, for the further reason that the S.E. 1/4 of S.E. 1/4 of section 11 is not contiguous to the W. 1/2 of N.E. 1/4 of section 14.
Our conclusion, therefore, is that the plea of prescription is not well founded as to the 40 acres of land described as S.E. *Page 125 
1/4 of S.E. 1/4 of section 11, or as to the 20 acres described as S. 1/2 of N.E. 1/4 of N.E. 1/4 of section 14, T. 11 N., R. 2 E.
The prescription of 10 years, liberandi causa, under article 2221, was pleaded against the action to annul or rescind the sale made by the minor children to J.C. Harper, of the W. 1/2 of N.E. 1/4 of section 14. As the prescription of 10 years acquirendi causa bars the action to recover that tract of land, it is not necessary to consider the prescription liberandi causa. This prescription is not pleaded in support of any alternative claim of a real right, or servitude, or right to any timber that may yet be standing, on the S.E. 1/4 of S.E. 1/4 of section 11 or the N. 1/2 of N.E. 1/4 of section 14, by virtue of the sale made by George Cross, tutor, to S.H. Brown, on the 10th of May, 1902. If the lumber company hereafter claims any such right on these tracts of land, the claim will not be foreclosed by the judgment which we shall render in this case, but will be subject to any plea of prescription or other appropriate defense that John Kees and Commodore Kees may have to urge.
Inasmuch as all of the timber which the Louisiana Central Lumber Company took from the land in contest was taken from the W. 1/2 of N.E. 1/4 of section 14, of which the company has a title by prescription, the demand of the plaintiffs for the value of the timber must be rejected. *Page 126 
The Louisiana Central Lumber Company set up in its answer to this suit a tax title for three acres of land described in the tax deed as "3 acres in N.E. corner of the N. 1/2 of the N.E. 1/4 of the N.E. 1/4 of Sec. 14, Tp. 11 N., R. 2 E." The judge of the district court decided that the tax sale was null for want of a sufficient description of the property. The lumber company complains of the decision, in the company's answer to the appeal. We agree with the judge of the district court that the description in the tax deed is too vague and indefinite to identify any particular three acres of land in the northeast corner of section 11. The land intended to be conveyed cannot be located without the shape or dimensions being given. No argument has been offered in support of this tax title. The judgment declaring it null is correct.
 Decree.
The judgment appealed from is amended so as to adjudge and decree that the plaintiffs, John Kees and Commodore Kees, are the owners of the tract of land containing 80 acres and described as S.E. 1/4 of S.E. 1/4 of section 11, and N.E. 1/4 of N.E. 1/4 of section 14, in Tp. 11 N., R. 2 E. In all other respects the judgment appealed from is affirmed at the cost of the defendant Louisiana Central Lumber Company. *Page 127