81 So.2d 852

**T. H. MARTIN, Sr.**

**v.**

**SCHWING LUMBER & SHINGLE CO., Inc.**

No. 42211.

June 30, 1955.

D'Amico & Curet, Baton Rouge, for appellant.

Obier & Middleton, Plaquemine, for appellee.

FOURNET, Chief Justice.

We granted certiorari in this case to review the opinion and decree of the Court

of Appeal, First Circuit, affirming the judgment of the District Court maintaining a plea of prescription of ten years, acquirendi causa, filed by the defendant, Schwing Lumber & Shingle Co., and dismissing the suit of the plaintiff, T. H. Martin, Sr., wherein he sought a partition in kind of certain lands in West Feliciana Parish allegedly owned in indivision by him and the defendant in the proportion of one-half interest in each and described as the N/2 of NW/4 and W/2 of NE/4, Section 13, T. 3 S., R. 4 W., containing some 160 acres. See La.App., 76 So.2d 328.

The land which is the subject of this controversy—open swampland, dry at certain periods of the year and at others water covered—was patented by the State of Louisiana to one Thomas W. Raynham in 1876, and in 1883 Raynham sold to Charles W. Leet and Edwin H. Leet. By mesne conveyance the undivided half interest of Edwin H. Leet eventually passed to the West Feliciana Lumber Company by sale duly recorded on May 15, 1918. On August 19, 1924, that company conveyed to the Schwing Lumber & Shingle Company, Ltd., whose assets were subsequently acquired by the defendant,[1] more than ten thousand acres of land consisting of various parcels in numerous adjoining sections, the land here concerned having been included in the

1. On January 28, 1929, the defendant company acquired all of the outstanding capital stock of Schwing Lumber & Shingle Co., Ltd. and thereafter exercised all control and possession of the property of the latter company, which was subsequently liquidated; and on December 28, 1938, the lands which Schwing Lumber & Shingle Co., Ltd. had acquired from West Feliciana Lumber Company were conveyed by the Liquidators to the defendant.

description of a total of 400 acres in said Section 13 without restriction or qualification as to the interest conveyed in the N/2 of NW/4 and W/2 of NE/4.[2]

Meanwhile, on July 28, 1917, the undivided half interest of Charles W. Leet was sold at tax sale to C. E. Thibodeaux for the unpaid taxes of the year 1916 [3] under an assessment in the name of C. W. Leet, and was recorded on July 30, 1917. The plaintiff acquired from Thibodeaux in 1951, there being a correction deed between the same parties dated October 30, 1952.

Upon trial of the case it was stipulated that C. E. Thibodeaux paid taxes on the property commencing with the year 1918 up to the time of the sale to plaintiff in 1951, except for the years 1921 and 1922 when the assessment was in the name of another; and that taxes on the property were also paid by the defendant or its predecessor beginning with the year 1924 under a custom of submitting a yearly list of property owned by the company to the Tax Assessor of the Parish of West Feliciana.

The Court of Appeal, from its appreciation of the evidence, found as a fact that, due to the nature of the land, the defendant had exercised possession in the only mode possible, that is, by repeated cutting and removal of timber, first through its own operations over the tract acquired from the West Feliciana Lumber Company and later through the operations thereon of the Natalbany Lumber Company, to which the Timber was sold in 1941 for a consideration of $11,150.03; and that while there was no definite proof that either the defendant or its predecessor, the Schwing Lumber & Shingle Co., Ltd., had actually cut timber from the particular lands in dispute, or, for that matter, from any part of the said Section 13, nevertheless the record does show that timber was cut from lands contiguous to and having a common boundary with the land which is the subject of this suit, and concluded that under the plea of ten years' prescription in good faith by just title the defendant's actual physical possession of any part constituted possession to the full extent of the property described in its deed. The Court rejected plaintiff's contention that the defendant cannot claim good faith because of the title examination made in 1924 upon acquisition by the Schwing Lumber & Shingle Co., Ltd., from the West Feliciana Lumber Company, the court having found that the record did not contain evidence sufficient to overcome the

2. The record reveals that omission of the description "undivided half interest" occurred for the first time in the sale to the West Feliciana Lumber Company which was recorded on May 15, 1918.

3. The description in the tax deed reads as follows: "97.80 acres of swamp land, being the undivided one-half of North half of Northwest quarter, and one-half [sic] Northeast quarter, Section 13, Township 3 South, Range 4 West, in the sixth Ward of the Parish of West Feliciana, State of Louisiana."

presumption of good faith provided by Article 3481, LSA–Civil Code.[4] Upon plaintiff's application, a writ of review was granted.

The record contains the testimony of Mr. C. K. Schwing, who became President of the defendant company following the death of his father in 1950. While he stated that he had never known of an adverse claim to the property in controversy until a few years past, when the land was leased to an oil company, at which time the oil company's representative advised him that either Mr. Thibodeaux or Mr. Martin (the plaintiff) was claiming an interest, he stated under cross-examination that at the time of the purchase from West Feliciana Lumber Company in 1924 he was Treasurer of Schwing Lumber Company, was in the office being taught the business, and knew all about the transaction as the matter was handled by his father; he further stated unequivocally and repeatedly, that the title to the property was examined at that time, and recalled that one of the attorneys who represents his company in this suit assisted in the examination of title, but did not remember whether they received a title letter from the examining attorneys at that time.

■ Under the express provisions of the LSA–Civil Code, four elements are essential to form the basis of the prescription of ten years acquirendi causa, the first of which is "Good faith on the part of the possessor."[5] While it is true that the existence of a title recorded in the name of a person other than the vendor does not of itself deprive the vendee of the presumption in his favor created by Article 3481 of the Code[6] and he may purchase without any investigation of the title yet be protected by the prescription of ten years if the four essentials exist,[7] however if, instead of relying on the faith of his vendor's title, he institutes an investigation into its validity, he is then bound by what the record reveals and cannot claim to be in good faith if the

---

4. "Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it."

5. Article 3479 provides: "To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur: 1. Good faith on the part of the possessor. 2. A title which shall be legal, and sufficient to transfer the property. 3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required. 4. And finally an object which may be acquired by prescription."

6. Note 4, supra.

7. Wells v. Goss, 110 La. 347, 34 So. 470; Delouche v. Rosenthal, 143 La. 581, 78 So. 970; Childs v. Porter-Wadley Lbr. Co., 190 La. 308, 182 So. 516; Coleman v. Pollock, 191 La. 813, 186 So. 346; Keller v. Summers, 192 La. 103, 187 So. 69; Dupuy v. Joly, 197 La. 19, 200 So. 806; Smith v. Southern Kraft Corp., 202 La. 1019, 13 So.2d 335.

record discloses a defect in the title of his vendor.[8]

 · Unquestionably, the examination made by the defendant's attorneys prior to the purchase of August 19, 1924, disclosed that title to an undivided half interest was of record in the name of C. E. Thibodeaux, and that the company was acquiring only an undivided interest in the property; and, under the well-established rule of the law of agency, recognized in National Park Bank v. Concordia Land & Timber Co., 159 La. 86, 105 So. 234, a corporation is bound by the knowledge acquired by its officers or agents relating to its affairs and business. The rule is based on the theory that "it will be conclusively presumed that the agent will communicate to the corporation whatever knowledge or notice he receives in relation to his agency which is necessary to the protection of the interests of the corporation." 13 Am.Jur. 1035, Verbo Corporations, Sec. 1110.

The defendant's contention that under the decision of this Court in the case of Kees v. Louisiana Central Lumber Co., 183 La. 111, 162 So. 817, the knowledge of a defect in title may not be imputed to the corporation even though the attorney might have had such knowledge, is clearly without merit; a reading of the opinion will readily disclose its inapplicability from both a factual and a legal standpoint, since the attorney in that case, representing *himself* to be the owner, sold the land to the company.

For the reasons assigned, the judgments of the District Court and of the Court of Appeal, First Circuit, are annulled and set aside, the defendant's plea of prescription is overruled, and it is now ordered that the case be remanded to the Twentieth Judicial District Court for further proceedings. in accordance with law and the views herein expressed; all costs incurred in this Court and the Court of Appeal, First Circuit, to be paid by the defendant-appellee; all other costs to await the final determination of this matter.

---

8. Knight v. Berwick Lumber Co., 130 La. 233, 57 So. 900; Dinwiddie v. Cox, La.App., 9 So.2d 68, certiorari refused June 29, 1942; see, also, Juneau v. Laborde, 219 La. 921, 54 So.2d 325; Harrill v. Pitts, 194 La. 123, 193 So. 562; Tyson v. Spearman, 190 La. 871, 183 So. 201; National Park Bank v. Concordia Land & Timber Co., 159 La. 86, 105 So. 234.