SARTAIN, Judge.
This is an action against Southern Casualty Insurance Company, formerly the workmen’s compensation insurer of the plaintiff, Ed Jones, Jr., Inc., which seeks the recovery of allegedly overpaid compensation insurance premiums during the period February 1, 1968 through December 31, 1969. The case was first heard administratively by the Casualty and Surety Division of the Insurance Rating Commission (hereafter, The Commission) and, on appeal, by the Nineteenth Judicial District Court for the Parish of East Baton Rouge, Division “D”. The ruling of The Commission favorable to the defendant was affirmed by the district court and the matter is now before us for review.
The plaintiff asserts that during the months indicated above, Southern Casualty received from them excessive compensation premium payments totaling $23,053.26. The basis for this claim is, in short, that on February 1, 1968, a substantial change in the ownership of Ed Jones, Jr., Inc. took place which, under the rules of the Experience Rating Manual authorized and adopted for use in this state by the Insurance Rating Commission, entitled them to automatically be charged the manual rates then in effect rather than the higher rates then being charged them by Southern Casualty.
Prior to February 1, 1968, Ed Jones, Jr., Inc., a pulpwood business located in Zwolle, Louisiana, had been a closely held, family corporation with Mr. Jones holding 1998 of the 2000 authorized shares of stock, his wife holding one of the shares, and the remaining share being owned by their son-in-law, William Palmer. On that date, however, Mr. and Mrs. Jones sold their stock holdings in entirety to Palmer and Calvin H. Jones so that the two new owners acquired 1001 and 999 shares, respectively. At the time of this sale the corporation was paying compensation premiums at a rate considerably higher than the manual rates then in effect due to the high accident occurrence experienced by the operation; more particularly, an experience modifier of 1.79 had been imposed upon the corporation, this representing a sizeable premium beyond the manual rates.
Section III, Rule 11 of the Experience Rating Manual contains these provisions, in pertinent part:
“11. Change of Control, Management, Name, Operations or Ownership.
(a) If there is a change in control, management, name or operations, not accompanied by any change in ownership interest, incurred experience shall be used in future ratings.
(b) If there is a change in ownership interest, either alone or accompanied by a change in control, management, name or operations (other than as respects mergers or consolidations covered by Rule 10 of this Section) incurred experience shall be used in future ratings.
Exception: Incurred experience shall not be used in the future ratings of the entity undergoing change:
i. When the entire ownership interest after the change had no ownership interest before the change, or
*64 ii. When the collective ownership interest of all those having such an interest in the entity both before and after the change in ownership amounts to either:
(a) less than 331/3% of the ownership interest before the change, or
(b) less than 50% of the ownership interest after the change.
Note: In the application of this Exception an analysis shall be made to determine the individuals holding ownership interests in any entity, whether the entity be the one being rated or any other entity in any way connected, directly or indirectly, in any chain of ownership with the risk being rated. . . . ”
Clearly, the change of ownership effected by the purchase of the corporate stock by Palmer and Calvin H. Jones brought it within the purview of Section (b) ii. of Rule 11. For some eighteen months after the sale, however, the corporation continued to pay the rate which had been charged previously. In September of 1969, Palmer was made aware of the provisions of Rule 11 by an insurance agent from another company who had inspected the corporate books relative to acquiring its business for his employer. The facts of the case were then presented to the Southeastern Conference Rating Bureau and eventually to the National Council on Compensation Insurance but the matter remained unresolved due to the nonbinding nature of the ruling of the National Council.
Eventually, a claim was filed with the Casualty and Surety Division of the Insurance Rating Commission and an administrative hearing was had, which involved the taking of lengthy testimony. In deciding for the defendant, the Commission found that a change of ownership had indeed taken place which would require the application of Rule 11, supra, but that notice of such a change of ownership to the insurance carrier was contemplated by the Experience Rating Manual and that the manual rates would apply only from the time when proper notice was given. They further found that notice of the change of ownership was not received by Southern Casualty until September 24, 1969, at which time the manual rates would become effective between the parties.
The plaintiff contends, however, that notice sufficient to apprise the defendant of the change of ownership was conveyed to it through its agent and executive vice-president at the time, one Bruce Files, who was no longer an employee of Southern Casualty at the time of the Commissioner’s hearing into this matter. According to Palmer, Files and Southern Casualty’s Claims Manager, Ralph Jackson, in mid-January, 1968, came to the home of Ed Jones, Jr. to personally deliver the workmen’s compensation policy for that year. While there, Palmer and Files sat in Files’ automobile and specifically discussed the impending purchase of the Ed Jones, Jr., Inc. stock, what effects that purchase would have on future compensation premiums, and how best such premiums could, in the future, be reduced. Palmer further related that he plainly told Files that the transaction would be consummated on February 1, 1968, which it eventually was. Further questioning of Palmer revealed, however, that no notice of the purchase was given the defendant after the sale actually took place and, indeed, he candidly admitted that this information was generally withheld for competitive reasons and that, in view of the fact that the Board of Directors of Southern Casualty were all competitors of the plaintiff, that he would have been reluctant for them to be aware of the sellout by Ed Jones, Jr. Files did not testify and was not present at the hearing.
The District Judge, in affirming the action of The Commission, also concluded that the Palmer-Files conversation did not amount to notice to Southern Casualty, in that it was only indicative of an intention to effect a change of ownership, and that *65 such lack of actual notice to the insurer was fatal to the plaintiff’s case. We affirm that judgment.
It is apparently undisputed that a change of ownership did take place here which would bring it within the ambit of Rule 11(b) ii. of the Experience Rating Manual. The issue of notice of that change, or the lack of it, by the insured to the insurer seems to be res nova.
The Experience Rating Manual, which is copied and made a part of this record, makes no specific mention of the requirement of notice and Rule 11 provides only that “Exception: Incurred experience shall not be used in the future ratings of the entity undergoing change.”
However, as pointed out in The Commission’s ruling, a form numbered ERM-14 is provided insureds so that such notice can be supplied to the carrier. We think, as did they, that the Experience Rating Manual contemplates notice of such changes as it would be patently unfair to deny to an insurer the opportunity to decide at the time of receipt of such notice whether they wished to continue insuring that risk at manual rates or whether to discontinue coverage.
 In view of the fact that the manual makes no provision whatsoever, in specific terms, for notice, it would be beyond our province to strictly hold that only formal written notice to the insurer would suffice, for it has been recognized by the jurisprudence of this state that information informally given to corporate agents or officers is imputable to that corporation. See Martin v. Schwing Lumber & Shingle Co., 228 La. 175, 81 So.2d 852 (1955) and authorities cited therein. Had this information been discussed with Files after the stock sale took place, it would seem that Southern Casualty would have been properly on notice and coverage would have necessarily continued only at the manual rates, as provided in Rule 11. Without this information, however, which was ifl-tentionally not disseminated by the plaintiff’s officers, Southern Casualty was afforded no opportunity to cancel coverage; as such, they were entitled to continue to collect their premiums, which had been fairly based on the insured’s prior accident experience, until actual notice was received.
For these reasons, the judgment of the district court is affirmed, all costs of this appeal to be paid by the appellant.
Affirmed.