469 So.2d 1102 (1985)
Johnie Fenton PHILLIPS, Appellee,
v.
Burie Edgar PARKER, Appellant.
No. 16985-CA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1985.
Rehearing Denied June 7, 1985.
*1103 Shuey & Smith by John M. Shuey, Shreveport, for appellant.
Nelson, Hammons & Johnson by Walter D. White, Shreveport, for appellee.
Before FRED W. JONES, Jr., NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
Defendants, Burie Edgar Parker and Ruby Faye Green Parker, appeal from the judgment of the trial court in favor of plaintiff, Johnie Fenton Phillips, in plaintiffs boundary action. For the following reasons, the judgment of the trial court is amended and affirmed.
The record reveals that on January 7, 1947, G.R. Weaver acquired a tract of 2.55 acres of land located in Bienville Parish, Louisiana. The tract was lakefront property on Lake Bistineau. G.R. Weaver is the common ancestor in title of plaintiff and the defendants.
In August, 1955, defendant, Burie Parker, became interested in buying some lakefront property for a camp and contacted Mr. Weaver as to the possible purchase of a lot.
Dr. C.H. McCuller and Frank McCuller, plaintiffs ancestors in title, also became interested in purchasing lakefront property from Weaver.
It appears from the evidence that Weaver's property was not subdivided into lots nor were there any visible boundaries. Defendant, Burie Parker and Weaver met on the Weaver property in order to pick out the defendants' lot. The parties intended to subdivide the overgrown portion of the Weaver tract, that is, that area away from the Weaver camp where Weaver did not mow the grass.
On August 22, 1955, Weaver executed two "Cash Deeds" selling a lot to the defendants and a lot to the McCullers, for the consideration of $750.00 per lot. The McCuller deed was recorded on September 22, 1955 and contained the following property description:
A lot or parcel of land situated in the West portion of Lot No. 4 of Block No. 5 of Section 28, Township 16 North, Range 10 West, Bienville Parish, Louisiana, being more particularly described as follows to-wit:
Beginning at the NW corner of Lot No. 4 of Block No. 5 of subdivision of West portion of Lots 4 and 5 of Section 28, Township 16 North, Range 10 West, Bienville Parish, Louisiana, as per correction to subdivision dated April 10, 1937 by Jas. A. Lupo, C.E. dated November 10, 1939 thence from this point of beginning run East 315 feet, thence run South 51.75 feet, thence run West 320 feet (more or less) to the West boundary line of said Lot No. 4, thence run in a Northeasterly direction along the West boundaryline of said Lot No. 4 for a distance of 51.75 feet to the point of beginning.
After these two sales, defendant went out to the property in order to physically "mark off" the lot but was unable to do so. A reference to the property descriptions contained in the Parker deed revealed they had not obtained the parcel of property which they intended to buy. It was later learned that the property description in this deed was erroneous.
*1104 Defendants contacted an attorney, Milton Trichel, for advice. Trichel advised defendants to obtain a survey and a title examination. Defendants contacted a surveyor, Clifford Lutz, to survey the property they intended to purchase. Trichel apparently contacted an attorney, Lawrence May, to perform a title examination on the defendants' behalf. In a letter to Mr. Trichel dated October 12, 1955, Mr. May expressed the opinion that there was good and valid title to the property vested in Weaver as of October 5, 1955 at 3:00 p.m.
On October 7, 1955, by "Cash Deed", defendant purchased the lot they originally intended to buy. The property was more particularly described as:
A tract of land on Lake Bistineau situated in the West portion of Parcel No. 4 (sometimes referred to as Lot No. 4) of Lot No. 5 (sometimes referred to as Block No. 5) of Section 28, Township 16 North, Range 10 West, Bienville Parish, Louisiana, being Tract "B" (sometimes referred to as Lot "B") as per plat attached hereto as a part hereof, and being more particularly described as follows to-wit:
From an iron pin on the Lake Bistineau Traverse at the SW Corner of Parcel No. 4 of Lot No. 5 of the subdivision of the West portion of Lots 4 and 5 of Section 28, Township 16 North, Range 10 West, Bienville Parish, Louisiana, as per correction to subdivision dated April 10, 1937 by Jas. A. Lupo, C.E. dated November 10, 1939, run thence Northeasterly along the Lake Bistineau traverse 103.5 feet to the iron pin marking the Southwest corner of the tract herein conveyed, run thence East 320 feet to iron pin, run thence North 51.75 feet to iron pin, run thence West 290 feet to iron pin on Lake Bistineau traverse, run thence Southwesterly along Lake Bistineau traverse 59.8 feet to point of beginning of the tract herein conveyed, with all littoral and aquatic rights and all rights of accretion and prescription, whether acquisitive or liberative to which said vendor may be entitled.
This deed was recorded on October 31, 1955.
On the same date, defendants executed a correction deed, conveying back to Weaver the lot purchased in error on August 22, 1955.
Defendants began to immediately clear the property and to build their camphouse. Defendants erected a fence on the property in accordance with the survey in 1956 and it appears that they have been in peaceful possession of the property inside the fence since that date.
On February 11, 1972, the McCullers conveyed their lot to Homer A. Phillips, plaintiff's husband. The lot was conveyed by Mr. Phillips on May 24, 1979 to George McCallister. By instrument dated September 23, 1980, McCallister and his wife conveyed the property back to the plaintiff, who was a widow at that time. All of these deeds contain the same property description.
It appears that the property description in the deeds of the plaintiff and defendants contain an overlap of approximately a thirteen foot strip of property. In other words, there was a strip of property contained in the defendants deed which had been previously sold to the McCullers, plaintiff's ancestor in title.
Sometime in the fall of 1982, plaintiff desired to move a trailer home on her property and approached the defendant, Burie Parker, about the removal of the fence, indicating that it was located on her property. It appears from the evidence that this was the first notice to defendants that the fence was located on the plaintiffs' property. Defendant refused and plaintiff then instituted this boundary action on January 10, 1983. A surveyor was appointed by the court to perform a survey of the property of the parties. Defendants filed an exception of prescription alleging that they had acquired the property by acquisitive prescription, in that they had in good faith possessed the property located within the fence since 1955. The exception was referred to the merits.
*1105 At the trial on the merits, Lawrence May, testified he had examined the title to the defendants' property at the request of Milton Trichel. May testified he did not specifically remember seeing the McCuller deed and that the records at the courthouse were in somewhat poor condition. May testified that he examined the title according to the survey plat he had but that he did not recall comparing the McCuller deed to the plat to see if the footage lined up correctly. May testified that from the survey plat, it did not appear an overlap could occur due to the location of the defendants' lot on the map.
Plaintiff, Johnie Fenton Phillips, testified that the defendants' land is immediately adjacent to her property and that there is a fence running between the two lots. Plaintiff testified she requested that defendant temporarily remove the fence so she could move a trailer onto her property but the defendant refused. Due to defendant's refusal, plaintiff testified that she was forced to expand her camphouse in order to live there. Plaintiff stated that Frank McCuller had previously told her the fence was improperly placed. In the summer of 1982, plaintiff testified she told defendant that he had part of her land.
Defendant, Burie Edgar Parker, testified he became interested in purchasing a lot on Lake Bistineau in August, 1955, and contacted Weaver. Defendant testified he went to the Weaver property to examine the lot. Defendant stated the only dividing marks on the property was the area where Weaver mowed the grass around his camp as compared to an overgrown area. After securing financing, defendant purchased the lot. Defendant testified that he picked up the deed from Weaver and went out to the property in order to mark off the lot. Following the property description contained in the deed, defendant testified he found out he had purchased the wrong piece of property. Defendant testified he contacted Milton Trichel for advice, who told him to have a survey and a title examination performed. Defendant testified he contacted Clifford Lutz to survey the property contained in the deed and the property that he had intended to purchase. Mr. Trichel apparently contacted May to perform the title examination on the behalf of the defendants. After receiving the corrected deed in October, 1955, defendant testified he immediately began clearing the lot to build the camp which was finished in late December, 1955. Defendant testified the fence was built in the spring of 1956 and that the fence was placed according to the Lutz survey stakes.
The evidence revealed that the plaintiff and the defendants had paid property taxes on their lots.
The trial court held that defendants were unable to acquire the property by acquisitive prescription, finding that the defendants were in legal bad faith due to the error of the attorney in the title examination. The court held that plaintiff was the owner of the strip of property in dispute and ordered the boundary to be fixed according to the property description contained in the plaintiff's deed.
The court denied plaintiff's claims for damages and assessed defendants with all costs of the proceedings, including the survey costs.
On appeal, defendants assert the following assignments of error:
(1) The trial court erred in applying the Civil Code Articles on acquisitive prescription which existed in 1955, the time the defendants entered into possession, rather than the new Civil Code Articles which existed at the time the instant suit was filed and subsequently tried.
(2) In the alternative, the trial court erred in not applying the new Civil Code Articles, effective January 1, 1983, which are remedial and interpretive in nature and thus capable of retroactive application.
(3) In the alternative, the trial court erred in finding that the defendants were not in good faith under the old Civil Code Articles.
(4) The trial court erred in assessing the survey and court costs against the defendants.
*1106 The articles in the Louisiana Civil Code of 1870 on good faith acquisitive prescription were amended by Act No. 187 of 1982 which became effective January 1, 1983, shortly before the instant action was filed.
Old C.C. Art. 3479 and new C.C. Art. 3475 specify the following requisites for acquisitive prescription of ten years: possession of ten years, good faith, just title and a thing which may be acquired by prescription.[1]
The evidence is clear that defendants met three of the conditions in order to acquire property by acquisitive prescription, the only issue being whether they had the requisite good faith.
In determining whether the defendants' were in good faith, defendants argue the trial court erred in not applying the new law which was in effect when this suit was filed. Further, defendants argue that the new law is interpretive and remedial in nature, thus rendering it capable of retroactive application. In the alternative, defendants argue that the trial court erred in not finding the defendants in good faith under the old law.
Old C.C. Art. 3451 defined good faith as follows:
The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact; as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another.
New C.C. Art. 3480 defines good faith as follows:
For purposes of acquisitive prescription, a possessor is in good faith when he reasonably believes, in light of objective considerations, that he is owner of the thing he possesses.
The comments following the new article state the provision changes the law by eliminating the consideration of the subjective belief of the possessor that he owns the thing he possesses. Rather, the trier of fact must consider whether a reasonable person in the position of a possessor could believe himself to be the owner in light of objective considerations.
The trial court found that the defendants were in legal bad faith due to the error in the title examination which failed to detect the overlap in the property descriptions contained in the deeds.
Briefly stated, the doctrine of "legal bad faith" provided that an error of law, such an erroneous conclusion as to ownership rights, would preclude a finding of good faith for purposes of acquisitive prescription. For example, an incorrect assumption as to inheritance rights or as to community property interests has been considered legal bad faith. See Thibodeaux v. Quebodeaux, 282 So.2d 845 (La.App. 3rd Cir.1973), Martin v. Schwing Lumber & Shingle Co., 228 La. 175, 81 So.2d 852 (1955) and Dinwiddie v. Cox, 9 So.2d 68 (La.App. 2d Cir.1942). This doctrine is based on C.C. Art. 1846(3) which provides that an
(e)rror of law can never be alleged as the means of acquiring, though it may be invoked as the means of preventing loss or of recovering what has been given or paid under such error. The error, under which a possessor may be as to the legality [illegality] of his title, shall not give him a right to prescribe under it.[2]
The doctrine of "legal bad faith" has been legislatively overruled by new C.C. Art. 3481 which provides that neither error of fact or error of law defeats the presumption of good faith. Rather, the presumption is rebutted on proof that the possessor knows or should know that he is not the owner of the thing he possesses.
While it appears that an erroneous property description which was not discovered *1107 by a title examination would constitute an error of fact rather than an error of law which would act to place the defendants in legal bad faith, it does not appear that the trial court erred in holding that the defendants did not acquire ownership of the property by acquisitive prescription of ten years.
It is well-settled under Louisiana jurisprudence that while a purchaser is not charged with a duty to examine the public records nor with constructive knowledge of those records,
(w)here one who has had sufficient knowledge of the facts to put him on inquiry and fails to inquire, or one who has cause to inquire and fails to avail himself of the means and facilities at hand to inform himself of the true facts, is chargeable with all the facts which by a proper inquiry he might have ascertained.
Attaway v. Culpepper, 386 So.2d 674 (La. App. 3rd Cir.1980), writ denied 393 So.2d 746 (La.1980) at 676 and numerous citations therein. See also Martin v. Schwing Lumber & Shingle Co., supra, Dinwiddie v. Cox, supra, Bishop Homes, Inc. v. Devall, 336 So.2d 313 (La.App. 1st Cir.1976), writ denied 338 So.2d 1155 (La.1976), Isacks v. Deutsch, 114 So.2d 746 (La.App. 1st Cir.1959), Elflein v. Graham, 307 So.2d 669 (La.App.2d Cir.1975) writ denied 310 So.2d 645 (La.1975) and Holley v. Lockett, 126 So.2d 814 (La.App.2d Cir.1961).
Thus, if a purchaser has notice of facts as to a possible defect in his title to excite inquiry or voluntarily undertakes a title search, he is charged with the defects the title examination would reveal in the public records.
This theory of law based upon the public records doctrine, as distinguished from the doctrine of "legal bad faith," has not been altered by the new Civil Code Articles. The comments following new C.C. Arts. 3480 and 3481 note that the new provisions do not affect the public records doctrine. Under C.C. Art. 3481, the presumption of good faith may be rebutted when a purchaser voluntarily undertakes to search the public records and is thus charged with the knowledge that a reasonable person would acquire from the public records.
As the application of the public records doctrine was not changed by the passage of the new law, it is thus not necessary for this court to determine whether the new provisions are susceptible of retroactive application in the instant case.
Defendants were aware that the August, 1955 deed contained an incorrect property description. Defendants then undertook a title examination and were thus charged with the defects which the public records would have revealed. The McCuller deed had been recorded on September 22, 1955 and the property description contained therein was a matter of public record at the time of the defendants' title examination. Therefore, the defendants were not in good faith and could not acquire the property by acquisitive prescription of ten years, regardless of whether the subsequent purchase was made under an error of law or an error of fact. In other words, the classification of the type of error under which the defendants were laboring at the time of purchase is irrelevant as defendants voluntarily instituted a title search and were therefore charged with the title defects contained in the public records.[3]
Defendants argue that the trial court erred in assessing all of the survey and court costs to the defendants.
C.C. Art. 790 provides in pertinent part that "(w)hen the boundary is fixed judicially court costs are taxed in accordance with the rules of the Code of Civil Procedure."
C.C.P. Art. 1920 provides in pertinent part "(e)xcept as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable."
*1108 It is well-settled that in a boundary action, the general rule is that the fixing of a boundary is of benefit to both parties to the action so that the costs should be shared by the parties. See Fontenot v. Marks, 430 So.2d 810 (La.App. 3rd Cir. 1983), Bergeron v. Fournier, 426 So.2d 658 (La.App. 1st Cir.1982) and numerous citations therein.
There is nothing in the record to indicate why the trial court departed from this general rule and assessed all the costs to the defendants. There is no evidence in the record that either the plaintiff or the defendants acted unreasonably in failing to reach an amicable settlement. Thus, equity demands that the costs of the survey and the court costs of the proceedings below be shared equally between the parties.
For these reasons, the judgment of the trial court is amended to assess all the costs of the proceedings below equally between the parties. As amended the judgment of the trial court in favor of plaintiff, Johnie Fenton Phillips, is affirmed. Costs of this appeal are assessed to defendants, Burie Edgar Parker and Ruby Faye Green Parker.
Affirmed.
NOTES
[1] The comments to the new article state that the provision reproduces the substance of C.C. Art. 3479; it does not change the law.
[2] The substance of C.C. Art. 1846 has been redesignated as C.C. Art. 1950, effective January 1, 1985, which reflects the repeal of C.C. Art. 1846(3).
[3] The evidence that defendants may not have directly hired or paid May to conduct the title examination is irrelevant.