FREDERICKA HOMBERG WICKER, Judge.
| aPlaintiff/appelIant, Romano Wholesale Liquor Company, Inc. (the company), appeals the trial court’s judgment granting the exception of prescription, thereby dismissing its action for the loss, mismanagement, or conversion of over $1.3 million deposited into its corporate account at Hibernia National Bank, now Capital One N.A. (Capital One). Capital One answered the appeal and has asked this Court to strike the trial court’s finding of fact that the corrected deposit slip, used as the basis for this claim, is a legitimate Hibernia National Bank corrected deposit slip. For the reasons that follow, we affirm the judgment granting the exception of prescription but deny Capital One’s request to overturn the trial court’s finding of fact.
LFacts and Procedural Background
Mr. Marcel DeJean and his wife, Mrs. Felicia Romano DeJean, incorporated Romano Wholesale Liquor Company, Inc. in 1992. The initial report shows Mr. DeJe-an as president and Mrs. DeJean as the secretary/treasurer. Shortly after incorporation, Mrs. DeJean became ill and in need of a companion. Katherine — Mr. and Mrs. DeJean’s daughter — hired Mrs. Marie Bourg Troulliet to care for her mother *306 until her death in 1994. Not long after Mrs. DeJean died, it also became necessary for Mr. DeJean to have a companion. Mrs. Troulliet was subsequently rehired for that purpose. Mr. DeJean moved into Mrs. Troulliet’s home but maintained his separate home nearby.
Mr. DeJean continued to run the company with the help of his two children— Katherine and Patrick. The testimony indicates that Mr. DeJean exclusively handled Romano Wholesale’s banking until 1998 when he developed congestive heart failure and was forced to use either a wheelchair or a cane. From 1998 until his death in 2001, Mrs. Troulliet always accompanied Mr. DeJean on bank visits. Mrs. Troulliet testified that in February of 1999, Mr. DeJean asked her to drive him to his home where he instructed her to go into the attic to retrieve a briefcase. Mrs. Troulliet complied and brought the briefcase to Mr. DeJean. When he opened the briefcase, Mrs. Troulliet saw that it was filled with cash. Mrs. Troulliet asked him how much money was in the briefcase, to which he responded, “it’s over a million.” Mr. DeJean counted the cash and completed a deposit slip for Romano Wholesale’s account. The next morning, Mrs. Troulliet drove Mr. DeJean to the bank to deposit the cash.
| ¡When they arrived at the bank, the branch manager, Ms. Diane Fennidy,[1] the person who traditionally helped Mr. DeJe-an with his banking, took the deposit. Ms. Fennidy took the briefcase into another room unaccompanied by either Mr. DeJe-an or Mrs. Troulliet. Ms. Fennidy returned with a “corrected deposit slip” which showed that the prepared deposit slip was off by $18.13. Nevertheless, the total cash deposit reflected on the corrected deposit slip was in the amount of $1,387,595.13. Mrs. Troulliet testified that Mr. DeJean never told his children about the deposit — Katherine and Patrick corroborated that fact. Mrs. Troulliet further testified that she asked Mr. DeJean whether he intended to tell his children about the deposit. He indicated he might tell his daughter, but that it was “none of their business.” Katherine, Patrick, and Mr. DeJean continued to run the company together until Mr. DeJean’s death in 2001. The testimony indicates that prior to his death, Mr. DeJean continued to handle Romano Wholesale’s banking, including making deposits and reviewing bank statements.
Seven years after Mr. DeJean’s death, Katherine was cleaning out her father’s house in November 2008 when she found the briefcase with the corrected deposit slip from Hibernia National Bank dated February 7, 1999. Katherine checked the bank records and found that the deposit had never been posted to Romano Wholesale’s account. Thereafter, Katherine, Patrick, and Romano Wholesale filed suit against Capital One, ABC Insurance Co., and Ms. Fennidy for conversion of $1,387,595.13. The petition also stated causes of action in breach of fiduciary duty and unjust enrichment.
| fiCapitaI One excepted to the petition on the grounds of prescription and no right and no cause of action. Ms. Fennidy filed similar exceptions. Katherine, Patrick, and Romano Wholesale did not oppose the exception of no cause of action for breach *307 of fiduciary duty and unjust enrichment and subsequently consented to a judgment on those issues with prejudice. Katherine and Patrick also consented to a judgment sustaining Capital One’s exception of no right of action which dismissed their claims with prejudice. Therefore, Romano Wholesale was the only remaining plaintiff and the only cause of action remaining was conversion of loss of the deposit in excess of $1.3 million in cash. The trial on Capital One’s exception of prescription against Romano Wholesale was heard on August 25, 2010. After the hearing, the trial court granted the exception and dismissed Romano Wholesale’s claim.
Romano Wholesale appeals the trial court’s judgment, arguing that the trial court erred in applying the bank statement rule to determine that its claim had prescribed and further erred by not applying the doctrine of contra non valentem. Capital One answered the appeal, seeking to strike the trial court’s finding of fact that the corrected deposit slip, used as the basis for this claim, is a legitimate Hibernia National Bank corrected deposit slip.
Discussion
On the trial of a peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. La. C.C.P. art. 931. When evidence is introduced at a hearing on an exception of prescription, the trial court’s findings of fact are reviewed under the manifest error standard. Waguespack v. Judge, 04-0137, p. 4 (La.App. 5 Cir. 6/29/04), 877 So.2d 1090, 71092. (citation omitted). However, in the absence of evidence, the exception of prescription must be decided on the facts alleged in the petition, and all allegations thereof are accepted as true. Id. Ordinarily, the exceptor bears the burden of proof at the trial of the peremptory exception. Id. However, if prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed. Id.
Romano Wholesale alleges conversion and specifically states that the losses and damages it sustained “were caused by the negligence, fault, acts and omissions of the defendant, Fennidy.” A conversion action against a bank is subject to a one-year liberative prescriptive period. Matthews v. Bank One Corp., 44,818, p. 6 (La.App. 2 Cir. 10/28/09), 25 So.3d 952, 955. Thus, Romano Wholesale’s conversion claim prescribed one year after the alleged conversion occurred. Its suit, however, was not filed until ten years later. Because prescription is evident on the face of the petition, Romano Wholesale bears the burden of proving that its claim has not prescribed.
To meet its burden, Romano Wholesale relies on the doctrine of contra non valen-tem. This principle is based on the equitable notion that no one is required to exercise a right when it is impossible for him or her to do so. Harvey v. Dixie Graphics, Inc., 593 So.2d 351, 355 (La.1992). (citation omitted).
Under Louisiana jurisprudence, there are four general situations to prevent the running of prescription: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiffs action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not | «known or reasonably knowable by the plaintiff, even though this ignorance is not induced by *308 the defendant. In re Manus, 10-82, p. 4 (La.App. 5 Cir. 5/25/10), 40 So.3d 1128, 1130. (citation omitted). Romano Wholesale argues that situations three and four are applicable here.
Under situation three, Romano Wholesale must show that Capital One engaged in some act which prevented it from availing itself of its cause of action. Under situation four, Romano Wholesale must show that it did not know or could not have reasonably known about the conversion. Romano Wholesale' argues that neither Katherine, Patrick, or Mr. DeJean had reason to believe a conversion occurred because the funds were accepted by Capital One’s branch manager and verified in the corrected deposit slip.
The testimony in this case indicates that Mr. DeJean, as Romano Wholesale’s corporate president, deposited $1,387,595.13 into the corporate account in February of 1999. After making that deposit, Mr. De-Jean continued to run the company, including handling the banking and reviewing the bank statements, until his death in October 2001. The testimony also shows that Mr. DeJean never mentioned the deposit or the fact that the bank statements failed to reflect the deposit to either of his children.
The Louisiana Supreme Court stated, in Martin v. Schwing Lumber & Shingle Co., Inc. (1955), 228 La. 175, 81 So.2d 852, 854, that “a corporation is bound by the knowledge acquired by its .officers or agents relating to its affairs and business.” Hence, a corporation is presumed to know what each officer knows. Therefore, Romano Wholesale was presumably aware that it deposited $1,387,595.13 into its corporate account and that such deposit was never reflected on its bank statement.
|9We, therefore, find that the doctrine of contra non valentem is inapplicable here. Capitol One did not perform any act that would have prevented Romano Wholesale from availing itself of its cause of action. In fact, Capitol One took proactive measures which would have allowed Romano Wholesale to discover the missing deposit when it continued to mail monthly bank statements to its customer. Therefore, this assignment is without merit.
Romano Wholesale also argues that the trial, court erred in relying on the bank statement rule to find its claim had prescribed. The bank statement rule applies to unauthorized signatures or alterations from a customer’s account. See UCC 4-406. That is not what occurred here. To the extent that the bank statement rule was implicated, the trial court erred. It is unclear, however, that that is what actually occurred here. The judgment seems to say that Capital One did not attempt to conceal any wrongdoing and had Mr. De-Jean reviewed the monthly bank statements, the missing deposit could have been easily discovered.
Finally, Capital One has asked this Court to strike the following factual finding the trial court made:
Marcel DeJean, with the assistance of Mary Bourg, made a cash deposit into the Company’s bank account at Hibernia National Bank on Saturday, February 6, 1999, in the sum of $1,387,595.13, and obtained a legitimate Hibernia National Bank corrected deposit slip for that sum.
The Louisiana Supreme Court, in Hall v. Folger Coffee Co., 03-1734, p. 9 (La.4/14/04), 874 So.2d 90, 98, set forth the standard of review for a trial court’s factual finding:
[t]he appropriate standard for appellate review of factual determinations is the manifest error — clearly wrong standard, which precludes the setting aside of a district court’s finding of fact unless that *309 finding is clearly wrong in light of the record reviewed in its entirety, (citation omitted) Thus, a reviewing court may not merely decide if it would have found the facts of the case differently. Id. The reviewing court should affirm the district court where the district court judgment is not clearly wrong or manifestly erroneous, (citation omitted).
ImThe record supports the trial court’s finding that the deposit slip was a legitimate Hibernia National Bank corrected deposit slip. Ms. Barbara Decorte, Hibernia’s assistant branch manager in 1999, testified at the hearing and identified the corrected deposit slip as an authentic document. She further testified that she knew Mr. DeJean as a regular customer. Mrs. Troulliet testified that she saw the deposit slip in February 1999, and while she could not be certain, she stated that it looked like the one Mr. DeJean received on the day of the deposit.
Given the testimony, we find that the trial court’s factual finding that the document was a legitimate Hibernia National Bank corrected deposit slip was not manifestly erroneous.
For the foregoing reasons, the judgment appealed from is affirmed.

AFFIRMED.

EDWARDS, C.J., dissents.

. In 2001, a federal indictment was issued against Diane Fennidy, charging her with bank fraud that occurred between January of 1999 and February of 2001. The indictment charges that Ms. Fennidy prepared and submitted fraudulent loan documents, including applications, promissory notes, assignment of deposit account forms and boarding data that totaled $257,641 in losses to Hibernia Bank. Ms. Fennidy pled guilty to the charges on January 28, 2004.