On February 26, 1935, the defendant herein sold to the plaintiff, by act of sale duly acknowledged before Bascom D. Tally, Notary Public, a tract of land containing 107.53 acres in the Parish of Washington. The sale was duly recorded in the conveyance records of that Parish.
The consideration mentioned in the act of sale is the sum of $750 cash. In the deed there appears this clause: "It is understood that this is only a quit-claim deed and that William I. Daniel (the vendor) does not warrant any part of the deed to the said property." There is another clause which reads as follows: "It is further understood that the property included in this deed is this day being mortgaged back to William I. Daniel by all the Charlie *Page 584 
Peters heirs and that the giving of this title does not in any way prejudice the right of William I. Daniel under the mortgage."
In the petition which he has filed in this suit, plaintiff alleges that at the time of the purchase he was of the opinion that the defendant, who was his vendor, was the owner of the property being sold and that he was getting a good title but the truth and the fact of the matter was that the said vendor only owned an undivided half interest therein, which fact was well known to him when he made the transfer. He then sets out the following manner in which the defendant had acquired the undivided one half interest in the property: It was formerly owned by one Soloman Sam who had acquired it during the existence of the community between himself and his wife, and on September 3, 1929, after the death of his wife, the said Soloman Sam mortgaged it to the defendant herein for $650. The mortgage note not having been paid, foreclosure proceedings were instituted and at the sale the defendant became the purchaser and the property was adjudicated to him. Whilst he was adjudicated title to the whole he knew full well that the heirs of Soloman Sam's deceased wife owned an undivided interest in the property which he could not acquire and that by various acts he subsequently acknowledged their ownership of the said interest.
He then avers that he would not have paid $750.00 for an undivided one half interest only; that he executed the deed with the belief that he was obtaining title to the whole and it was not until sometime after the execution of the said deed and the mortgage that he learned that he only was getting an undivided one half interest. The object of the suit therefore is to have the sale rescinded and the defendant ordered to repay him the sum of $750, the purchase price of the property, together with interest at 8%, or that the said amount with interest be credited on the mortgage in which the property was included. In the alternative he asks that the purchase price be reduced to sum of $375, being one half of the amount of the whole together with 8% interest from the date of the sale and that he recover judgment for that sum.
During the argument of the case, counsel admitted that the alternative demand for the repayment of one half of the purchase price mentioned in the sale was the one he really thought plaintiff should recover on.
The defendant in his answer seems to rely on the fact that the deed he gave plaintiff on February 26, 1935, was purely a quitclaim deed or a deed without warranty of title, which speaks for itself. He sets out that whilst the sale shows a cash consideration of $750, as a matter of fact no money at all was paid, that amount having been stipulated at the request and by direction of the Peters heirs, of whom plaintiff was one, and their representatives. He avers that he never claimed to be the owner of more than an undivided one half interest in the property and that the plaintiff himself was well aware of that fact as the giving of this title and the fixing of the consideration was by agreement of all the parties and by a compromise of several pending law suits against the Peters heirs and other claims due by them. In the settlement of these various and sundry claims, law suits and judgments in which the Peters heirs were involved, they were represented by counsel and they were all amicably adjusted and the giving of the quitclaim title was part of the compromise settlement.
On these issues the lower court heard the case and after submission, rendered judgment in favor of the defendant rejecting the plaintiff's demand and dismissing his suit at his costs. From that judgment he has taken this appeal.
The main issue seems to center on the weight that is to be given to the testimony when viewed in connection with Article 2505 of the Revised Civil Code which stipulates as follows: "Even in case of stipulation of no warranty, the seller, in case of eviction, is liable to a restitution of the price, unless the buyer was aware, at the time of the sale, of the danger of the eviction, and purchased at his peril and risk." As already indicated, counsel for plaintiff virtually admitted in court that the defendant had a good title to an undivided one half interest in the property and that if he is liable to a restitution at all, it is only to one half of the purchase price recited in the deed. However, we are principally concerned with the last clause of the Article of the Civil Code under consideration by which the seller is relieved, in cases where there is a stipulation of no warranty, of the liability imposed, where it is shown that the buyer at the time of the *Page 585 
sale was aware of the danger of eviction and purchased at his own risk and peril. We therefore have to consider the testimony in the case in relation to what knowledge, if any, the plaintiff may have had at the time that he took title to the property from the defendant, that there was some risk in his accepting it.
From the testimony found in the record it appears that as long before as 1930 these Peters heirs, acting most probably through their brother, the plaintiff herein, had either bought or agreed to buy the property involved in this suit and had all signed a note for $750.00. The note was held by the defendant and various payments, either of interest or on the principal, or both, were made, but in February, 1935, there still remained a substantial balance due on the principal. In addition to owing this balance, the Peters heirs were involved in other obligations there being judgments recorded against some of them and lawsuits pending against others. It was at that time that through the offices of Mr. Daniel who had bought some of these obligations and to whom they owed the balance on the property in question, they settled and compromised all their obligations for the sum of $1675. On February 26, 1935, the date of the quitclaim deed to the plaintiff, there was also executed a mortgage by the widow and heirs of Charlie Peters in favor of Daniel to secure a note issued as of that same date for the sum of $1675, payable in yearly installments of $125 beginning October 1, 1935. The mortgage covered two tracts of land one of which, it is not disputed, was the 107.53 acre tract described in the deed to plaintiff on that day. We think that the testimony is convincing, and in fact it is so admitted by some of the Peters heirs, that in listing the obligations that were settled in the compromise, there was included the balance remaining due on the price which had been fixed as the consideration for the 107.53 acre tract of land. Mr. Bascom D. Tally who was living at the time and represented Mr. Daniel in the transaction testified that he prepared the quitclaim deed and made it to the parties they asked him to make it to. There never was any thought of any warranty, he said, because he was satisfied that they all knew that Mr. Daniel had only a half interest in the property.
In his own testimony plaintiff, in our opinion, shows himself to have been familiar with the whole situation regarding the title to the property and with all the various transactions involved in the settlement and compromise of the debts and other obligations of the Peters heirs. When pressed on cross-examination concerning his knowledge of all these matters, he invariably comes back with the evasive answer that when he bought the property he "thought he was getting 107 acres of land." He is made to admit that he knew that Soloman Sam formerly owned the property and that after his wife's death "he figured" his children ought to have an interest in it but is quick to add that he "got a title for it" and thought that "he could own it." His testimony did not impress the district judge who, on the strength of all the other facts and circumstances found in the record, concluded that at the time plaintiff took title to the property he was aware of the danger of eviction and purchased at his own risk and peril. Certainly no manifest error has been pointed out in his finding and we therefore hold that he was correct in rejecting the plaintiff's demand.
Counsel for plaintiff maintain that the district judge improperly overruled the objection made to the admission of parol testimony against or beyond what was contained in the deed, no allegations of fraud or error having been made. We do not think that the rule of evidence invoked, which is prescribed by Article 2276 of the Civil Code, has any application to a case of this character. Defendant has availed himself of a special defense provided for under Article 2505 of the Code to resist a liability claimed against him and which arises under that same article. That liability is the restitution to his vendee in the act of sale of the purchase price of the property, in case of eviction, even though there was a stipulation of no warranty between them. If however, he can show, that the vendee, at the time of the sale, was aware of the danger of eviction and purchased at his own peril and risk, he will be relieved of that liability. That is what the defendant undertook to do in his special defense and from its very nature we think that parol as well any other kind of competent, legal proof was admissible. If the knowledge he had alleged on the part of the vendee had appeared in the deed itself, there would have been no object in the latter bringing the suit because by the very terms of the article of the Code he would have been denied restitution. In the case of Citizens' *Page 586 
Bank v. Freitag, 37 La.Ann. 271, in commenting on the kind of proof required under the article of the Code, it is stated: "In order to escape liability to the purchaser for restitution of the price, the vendor should, as a rule, affirmatively establish actual knowledge by the former of the danger of eviction, either by direct proof or by implication from collateral facts so strong as to be equivalent to positive evidence." We do not think that under such a rigid requirement it is contemplated that the party resisting that liability should be restricted to the recitals of the deed itself and hold that parol proof was properly admitted in this case.
The judgment appealed from being found correct, it stands affirmed at the costs of the plaintiff, appellant herein.