304 So.2d 675 (1974)
Donald R. COLLINS, Plaintiff Appellee,
v.
A. Jerry SLOCUM et al., Defendants Appellants.
No. 4803.
Court of Appeal of Louisiana, Third Circuit.
November 27, 1974.
Rehearing Denied January 9, 1975.
Guste, Barnett & Colomb by J. Harrison Henderson, III, New Orleans, for defendants-appellants.
Provosty & Sadler by LeDoux R. Provosty, Jr., Alexandria, for third party defendant-appellee Field V. Gremillion.
Polk, Foote, Randolph, Percy & Ledbetter by William P. Polk, Alexandria, for third party defendant-appellee Morgan W. Walker, Jr.
Walter M. Hunter, Jr., Alexandria, for plaintiff-appellee.
Clarence L. Yancey, Cook, Clark, Egan, Yancey & King, Shreveport, Stafford, Pitts & Stafford by Grove Stafford, McSween, Brook & Bolton by Frank R. Bolton, Jr., Alexandria, for defendant-appellee.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
*676 MILLER, Judge.
Defendants Gwin LeBlanc, Jerry Slocum, and Harry Henderson, III appeal the judgment rescinding defendants' sale of a lot to plaintiff Donald R. Collins and awarding him damages for the cost of building his home on the lot. Collins answered the appeal seeking an increase in the $22,484.45 award. Numerous third party demands were filed by defendants. An intervention was filed by the Savings & Loan which financed Collins' building project. Another suit involving related issues was consolidated with this case for trial but no appeal has been perfected in that case.
Collins purchased lot 39 of Extension No. 2 of Holiday Estates, a subdivision in parts of sections 41 and 44, township 4 north, range 2 west. There was no exclusion of the petroleum pipeline which traversed his lot and no marking on the subdivision plat or on the ground to indicate that the lot was burdened with the pipeline. Collins' construction was terminated when Humble Pipe Line Company advised him that he was building over their pipeline and asked him to remove the improvements. LSH's third party action against Humble was dismissed on an exception of no cause of action. Collins v. Slocum, 284 So.2d 98 (La.App. 3 Cir. 1973).
The relevant facts are presented in chronological order.
Morgan Walker owned sections 41 and 44, T 4 N, R 2 W. On April 23, 1953 for $218 he granted a pipeline servitude or right of way to Interstate Oil Pipe Line Company (later Humble Pipe Line Company) across the entirety of sections 41 and 44. Grantee was given the right to install one pipeline for the stated consideration, and was granted the right to install additional lines of pipe upon payment of a like consideration and provided the lines were installed within twenty-five feet from the center of the first pipeline. Grantor agreed that he could not erect over the line or lines of Grantee "any improvements, lake or ponds of a nature such as to interfere with the rights hereby granted." This servitude agreement was recorded. Neither Grantee nor Grantor has recorded a plat to locate where the line traverses sections 41 and 44.
On June 23, 1953 Morgan W. Walker sold sections 41 and 44, T 4 N, R 2 W to Morgan W. Walker, Jr. The pipeline servitude was not excepted or referred to, but vendee knew of the existence and location of the servitude.
On May 11, 1959 Morgan Walker, Jr. granted Interstate Oil Pipe Line Company (later Humble) the right to install a cathodic protection system on the pipeline which traversed sections 41 and 44. The system was to be located in section 41, T 4 N, R 2 W, but the exact location was not specified. This "ServitudePipe Line Appurtenance" was recorded.
On October 8, 1965 Morgan Walker, Jr. sold to Gwin LeBlanc and a partner of LeBlanc's, 79.95 acres located in section 44, T 4 N, R 2 W. The purchase was made after LeBlanc had the title examined. The title opinion noted the recorded pipeline R/W granted by Walker. The deed from Walker, Jr. to LeBlanc and his partner did not except the servitude, and the tract is located across the street from one of the tracts purchased by LSH.
On October 8, 1965 Morgan Walker, Jr. sold to Gwin LeBlanc 40.02 acres located in section 44, T 4 N, R 2 W. This purchase was also made after LeBlanc had the title examined and that title opinion also noted the recorded pipeline R/W granted by Walker. This deed from Walker, Jr. to LeBlanc did not except the pipeline servitude, and that tract is near the tracts purchased by LSH.
On March 31, 1967 Morgan Walker, Jr. sold to Gwin LeBlanc 40.02 acres located in section 44, T 4 N, R 2 W. This purchase was made after LeBlanc had the title examined and that title opinion also noted the recorded pipeline R/W granted by *677 Walker. The survey attached to the deed shows the approximate centerline of a pipeline, and this is the approximate centerline of Humble's pipeline which proceeds on and across Collins' lot. This deed did not except the pipeline servitude which was shown on the attached plat, and that 40.02 acre tract is bounded on two sides by one of the tracts purchased by LSH.
On February 20, 1968 Gwin LeBlanc sold the 40.02 acre tract he purchased March 31, 1967, and attached the survey which showed the pipeline. The deed did not except the pipeline servitude.
On August 26, 1968 Morgan Walker, Jr. sold to defendants LSH 256 acres made up of three separate tracts located in sections 41 and 44, T 4 N, R 2 W. This purchase was made after LSH had the tracts surveyed and the title examined. The title opinion referred to the survey which was attached to the title opinion and deed, and stated that no recorded pipeline R/W servitude affected the lands. Walker testified that he told LeBlanc about the pipeline and had showed it to him on prior occasions. The deed did not except the pipeline servitude which, in fact, crossed portions of the property purchased by LSH, and specifically crossed what was later subdivided and made lot 39.
It was established that Gwin LeBlanc managed the investment for Slocum and Henderson.
Before making the purchase, LSH employed Louis J. Daigre Associates, consulting engineers, to survey the property. The survey did not show the pipeline servitude and it was on the basis of that survey, that LSH's attorney certified that the recorded servitudes did not affect the property which LSH were purchasing. The survey prepared for LeBlanc's February 20, 1968 purchase of adjacent properties (which showed the pipeline) was also prepared by the Daigre firm.
On April 1, 1971 LSH sold to Donald R. Collins lot 39 which is the subject of this dispute. The deed did not except the recorded pipeline R/W and there was nothing on Daigre's plat of the subdivision or on the ground to indicate the lot was burdened with the pipeline servitude. Collins did not have the title examined.
Sometime in May 1971 Collins applied to Rapides Savings & Loan Association of Alexandria for financing to construct his home on lot 39. As part of the closing costs for the loan, Collins paid the fee for the title examination made for the Savings & Loan. Collins had no right to choose the examining attorney and the examination was made for the benefit of the Savings & Loan according to all testimony in this record. The title examiner did not mention the recorded pipeline servitude. There was no reference to a survey or statement that Collins' title was subject to the possibility that recorded servitudes might restrict his ownership. The title was approved as a clear title, and the loan was granted.
Collins acted as his own contractor in building his home on lot 39 and construction was about 65% completed on July 22, 1971 when he was notified by Humble that their recorded pipeline servitude (affecting all of section 44) actually traversed his lot on and along a line under the center of his home. Construction stopped and this litigation commenced.
All concede that Collins would not have bought lot 39 had he known of the servitude. LSH testified that they would not have sold it as a building site had they known the pipeline crossed his lot.
LSH first contend that their one appeal brings up for review the two judgments signed in the consolidated cases.
Only one case was appealed and only one filing fee was paid to our court. We will not consider the issues raised by LSH related to their separate suit against their attorney Field V. Gremillion. That *678 judgment has not been appealed to this court.[1]
A review of the record and exhibits establishes that the judgments presented to and signed by the court in the two cases do not decide all claims presented in the pleadings. The claim against McSween & McSween was severed and presumably remains on the trial court's docket for trial at a later date.
The claim against Louis J. Daigre Associates in the case appealed to us was ruled on by the trial judge (when he sustained Daigre's exception of no cause of action), but no judgment has been signed sustaining that exception. The parties may have concluded that since the claim against Gremillion was dismissed, his third party claim against Daigre was no longer viable. This presupposes an affirmation of the trial court's dismissal of LSH's claim against Gremillion. If that decision is reversed, we might then be called upon to review the ruling dismissing Gremillion's third party claim against Daigre Associates. Since there is no judgment dismissing Gremillion's third party action against Daigre, the ruling could not be appealed.
LSH contend the trial court erred in dismissing their third party claims against 1) their vendor Morgan W. Walker, Jr., 2) his vendor Morgan W. Walker, 3) their attorney Field V. Gremillion, and 4) his insurer St. Paul Fire & Marine Insurance Company. Their principal complaint concerns the trial court's ruling that LeBlanc had constructive knowledge of the existence and location of the servitude. This holding was grounded on the finding that only shortly before purchasing the 256 acre tracts, LeBlanc had purchased three other adjacent or nearby tracts from Walker, Jr. Each purchase followed a title examination, and each examination mentioned the pipeline servitude. The adjacent tract which is, in effect, a cutout from one of the three tracts purchased by LSH, was surveyed by LeBlanc's engineers Louis J. Daigre Associates. That survey was presented on a recorded plat which showed the pipeline R/W, and the title opinion (relating to that 40.02 acre tract) specifically called LeBlanc's attention to the recorded pipeline servitude.
LSH also contend the trial court erred in dismissing its third party actions. Their strongest argument concerns their third party claim against their attorney who did not testify. His title opinion is in the record and certifies that he examined the records of Rapides Parish insofar as they bear upon and affect the 256 acre tracts (specifically described) "[a]ll of the above property being shown by Survey of Louis J. Daigre dated July 19, 1968." Relevant here is the following statement in the opinion:
Our examination of the records indicates a number of rights-of-way and servitudes affecting this property above described and shown on the Plat of Survey attached hereto except . . . . The other rights-of-way have no reference to the property under discussion.
We also have a serious question concerning the trial court's ruling on the intervention by Rapides Savings and Loan Association. Their claim was recognized to the extent of their $9,318.00 loan together with insurance expenses and interest amounts arising out of Collins' loan. This ruling was made without discussing the merits of the third party claim by Gremillion that the Association's attorney negligently approved the title. Although the Association was not sued by Collins, Collins denied that the Association should be paid. Since *679 the claim against McSween & McSween, attorneys for the Association, was severed, the trial court did not rule on the allegation that McSween & McSween should stand the loss for the improvements made on lot 39.
In order to render a judgment which is just, legal, and proper, all matters presented in the pleadings should be tried and decided. As permitted by LSA-C.C.P. art. 2164, we find it appropriate to remand this case so that all issues may be presented at one time.
Specifically, we note the pending claim against McSween & McSween and the absence of a judgment deciding the claim against Louis J. Daigre Associates. If the judgment in the consolidated suit is not final and should an appeal be taken in that suit, we note the absence of a judgment deciding the third party claims.
The case is remanded to enable the court to try the remaining issue or issues and to decide all claims presented by the pleadings. Costs of this appeal will be taxed when the appeal is next presented to this court.
Remanded.
NOTES
[1] A copy of that judgment was brought to our attention during oral argument. The judgment does not decide Gremillion's third party claims against McSween & McSween and Louis J. Daigre Associates. LSH state that they received no notice that the judgment had been signed dismissing their claim in the separate suit (# 82,016docket of Rapides Parish) against Gremillion. If that is established, the delays for taking an appeal from that judgment have not commenced to run.