317 So.2d 672 (1975)
Donald R. COLLINS, Plaintiff-Appellee-Appellant,
v.
A. Jerry SLOCUM et al., Defendants-appellants-Appellees.
Nos. 4803 and 5059.
Court of Appeal of Louisiana, Third Circuit.
July 16, 1975.
Rehearings Denied August 28, 1975.
*676 Provosty & Sadler by LeDoux R. Provosty, Jr., Alexandria, for St. Paul.
Guste, Barnett & Colomb by Sidney L. Shushan and J. Harry Henderson, III, New Orleans, for A. Jerry Slocum, and others.
Gist, Methvin & Trimble by DeWitt T. Methvin, Jr., Alexandria, for McSween & McSween.
Polk, Foote, Randolph, Percy & Ledbetter by William P. Polk, Alexandria, for Morgan Walker.
Walter M. Hunter, Jr., Alexandria, for Donald R. Collins.
Gold, Hall, Hammill & Little by Donald Sharp, Alexandria, Stafford, Pitts & Stafford by Grove Stafford, Jr., Alexandria, as one of counsel for defendant-appellant-appellee.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
MILLER, Judge.
This case was remanded by this court to obtain a complete record with signed judgments affecting all parties. Collins v. Slocum, 304 So.2d 675 (La.App. 3 Cir. 1975). For a statement of facts, see 304 So.2d pp. 676, 7. After complying with our order of remand, the trial court transmitted the entire record back to this court.
This case was consolidated for trial with another suit involving related issues. Slocum v. St. Paul Fire & Marine Insurance Company, et al., 317 So.2d 683 (La.App. 3 Cir. 1975, # 4933 and 5060), which is being this date decided in a separate opinion.
We first consider three alleged procedural errors raised to this appeal, which are:
1) LSH's appeal is not properly before this court.
2) The trial court erred in denying LSH's motions, after remand, seeking to amend their pleadings and add new parties defendant.
3) This case should again be remanded to allow evidence to determine the extent of Humble's pipeline servitude and its effect on LSH's property.
We consider these issues in that order.
1) Collins and third party defendants Walker, Jr., and Walker, Sr., contend that LSH's appeal is not properly before this court. They contend that there is no continuing appeal after a remand. Higgins v. Haley, 28 La.Ann. 216 (1876). In effect, they argue that this court was divested of jurisdiction when it remanded the case, and jurisdiction cannot be reinstated absent a new motion for appeal and a new appeal bond. Since the only appeal taken, after remand, was by Gremillion from the judgment sustaining third party defendant's peremptory exception to his third party claims against Daigre and McSween, it is argued that LSH's appeal is not before this court.
LSH contend there were no new judgments adverse to their claim and therefore they had nothing new to appeal. Higgins v. Haley, supra, involved a second judgment which was adverse to appellant and they distinguish it on that basis.
*677 The confusion results from our decree. Although we said "Remand" we intended to hold the judgment in abeyance and remand the case for trial of the remaining issues. See Simmons v. Beauregard Parish School Board, 293 So.2d 226 (La.App. 3 Cir. 1974).
We hold that the briefs and arguments of the original appeal present those same issues to this court at this time. The contention that some parties were unaware at oral argument that the issues of the first appeal were to be argued is unsupported. The trial court's order put all attorneys on notice that he was transmitting the entire record back to the court of appeal. Furthermore some of the briefs submitted on this argument simply adopted their original brief. The others addressed all issues.
2) After the remand, LSH attempted to file new third party demands against Louis J. Daigre d/b/a Louis J. Daigre Associates; McSween & McSween, a partnership; Harold B. McSween and Jack P. Brook, individually; Rapides Savings and Loan Association; and Humble Oil Company. The trial judge denied leave to file these new demands and LSH sought supervisory writs from this court, which were denied.
The trial court correctly disallowed these new pleadings. The case was ". . . remanded to enable the court to try the remaining issue or issues and to decide all claims presented by the pleadings." We intended only that the trial court render decisions and sign judgments as to all parties in the suit. We did not intend the case to be opened for new issues and for bringing in new parties. LSH had ample time prior to trial to bring in all parties.
3) LSH contends that this case must be remanded because Humble Oil is a "necessary party" and the liability issue cannot be determined without the ultimate determination of the scope of Humble's servitude, limitations, rights, duties, liabilities, and use. In support of this contention, LSH cite the case of Greer v. Sumney, 41 So.2d 526 (La.App. 1 Cir. 1949).
Humble was originally third partied in this suit by LSH, but was dismissed on the peremptory exception of no cause of action. Collins v. Slocum, 284 So.2d 98 (La.App. 3 Cir. 1973). Accepting the statement from Greer v. Sumney, supra, as true that Humble Oil is a "necessary party" LSH waived its right to plead the dilatory exception of "non-joinder of a necessary party." LSA-C.C.P. art. 928. See also State Farm Fire & Casualty Company v. Sentry Indemnity Company, 317 So.2d 683 (La.App. 3 Cir. 1975, # 5013).
The statement in Greer v. Sumney, supra, that a court on its own motion, may take cognizance of lack of necessary parties to the suit, though no exception of non-joinder of such parties is filed, was legislatively overruled by C.C.P. art. 643. See Official Revision Comment (a) of that article.

Principal Demand
This suit was brought by Collins against his vendors, LSH. He purchased the property by warranty deed, and the pipeline servitude was not excepted from his deed.
Prior to the purchase, on April 23, 1953, Morgan Walker, Sr., had granted a pipeline servitude across the entire section without designating where the pipeline would cross. The servitude provided that no improvements could be erected over the pipeline.
This pipeline servitude prohibited the erection of improvements above the line. To this extent it is a non-apparent servitudesuch as the prohibition of building on an estate, or of building above a particular height. These servitudes have no exterior sign of their existence. Lallande v. Wentz, 18 La.Ann. 289 (1866).
*678 Generally, one of seller's obligations is to warrant buyer's peaceful possession against claims of third persons, both as to title to the thing sold and as to charges thereon not declared at the time of the sale. LSA-C.C. art. 2501. If there is only a partial eviction from the thing sold, buyer cannot claim rescission of the sale, but is relegated to an action against seller for reimbursement of a proportionate amount of the purchase price. LSA-C.C. art. 2514. Where, as here, the property sold is encumbered by a non-apparent servitude, buyer has the option of seeking indemnification for the encumbrance of his property or of having the contract canceled, provided the magnitude of the encumbrance is such that it could be fairly presumed he would not have purchased the property had he been aware of its existence. In all events, purchaser cannot recover if the servitude was declared at the time of the sale. LSA-C.C. art. 2515. See O'Reilly v. Poche, 162 So.2d 787 (La.App. 4 Cir. 1964). This servitude was not declared at the time of the sale.
It was conceded that Collins would not have purchased the lot had he known of the servitude. This constitutes a partial eviction where the magnitude is such that Collins is entitled to rescind the sale.
We next consider the extent of Collins' damages. He seeks a return of the $4,000 purchase price, the enhanced value of the land due to his improvements, attorney fees, and damages for mental anguish.
The trial court awarded Collins the purchase price plus his actual expenses incurred in building the home which totaled $22,484.45, plus all insurance premiums and interest payments due on his related loans.
The following Civil Code articles are relevant:
2506. When there is a promise of warranty, or when no stipulation was made on that subject, if the buyer be evicted, he has a right to claim against seller:
1. The restitution of the price.
2. That of the fruits or revenues, when he is obliged to return them to the owner who evicts him.
3. All the costs occasioned, either by the suit in warranty on the part of the buyer, or by that brought by the original plaintiff.
4. The damages, when he has suffered any, besides the price that he has paid.
2509. The seller is bound to reimburse, or cause to be reimbursed, to the buyer, by the person who evicts him, all useful improvements made by him on the premises.
LSH contend that Collins cannot recover because he had constructive knowledge of the existence of the servitude, because Humble's servitude was recorded. The trial judge rejected this contention and the record supports his findings. Collins did not have the title examined prior to buying the lot. When he borrowed money from the Savings & Loan to build his house, they had the title examined at Collins' expense. However, this title examination was for the Savings and Loan and not Collins.
There is no evidence in this record to indicate Collins had actual or constructive knowledge. The trial court properly awarded Collins the $4,000 he paid for the lot.
Collins' itemized expenditures totaling $19,065.52. Expert testimony indicated the improvements by Collins enhanced the value of the land by $24,000.
We apply LSA-C.C. art. 2506(4) rather than 2509. Article 2509 is based on the principle of equity that on should not enrich himself at another's expense. Pearce v. Frautum, 16 La.Ann. 414 (1840). LSH have not been enriched by this building because the building will have *679 to be removed under the terms of Humble's servitude. Collins paid $19,065.52 for his improvements and therefore suffered damage in that amount. These damages were foreseeable by LSH because they knew Collins intended to construct a home on his lot.
The trial court properly rejected the claim for attorney fees associated with this warranty action. Juneau v. Laborde, 228 La. 410, 82 So.2d 693 (1955); Miller v. Patterson, 240 So.2d 22 (La.App. 2 Cir. 1970).
The trial court properly rejected Collins' claim for mental anguish. Collins based his claim on LSA-C.C. arts. 2516 and 1934 and cases allowing damages for mental anguish under art. 1934. We do not reach the issue, for Collins did not prove mental anguish.
The trial court properly rendered judgment against LSH in solido.

Intervention by Savings & Loan
Rapides Savings & Loan intervened to recover the amount Collins owes on the loan which is secured by their mortgage. The Savings & Loan employed their attorney to examine the title to determine whether a loan to Collins should be made. It was established that this examination was not made on Collins' behalf, although Collins paid for the title examination. The title examiner failed to discover the existence of the pipeline servitude, and a loan was granted to Collins. Had the title examiner reported the possibility of the pipeline crossing the lot, further inquiry would have been made to determine its exact location before approving the loan.
Although we have grave doubts concerning the propriety of this intervention (and the award to the Savings & Loan), our hands are tied. No one sued the Savings & Loan. Collins' answer to the intervention denied the claim, but he did not appeal the trial court's judgment awarding the Savings & Loan the amount of its loan. Collins' answer to LSH's appeal did not complain about that award.
When an appellee answers an appeal, LSA-C.C.P. art. 2133 requires appellee to state the relief demanded. Since the award to the Savings & Loan was not properly before us, the trial court's recognition of the intervention will stand.

Third Party Demand Against Gremillion
Prior to purchasing the 256 acre tract from Walker, Jr., LSH employed Gremillion to examine the title. The pipeline servitude affected the entire section in which the 175.8 acre tract is located, and did not indicate its route. Based on Daigre's survey which did not show a pipeline crossing the tract, Gremillion certified that the recorded rights-of-way and servitudes "in no manner encroach upon the property above described and shown on the Plat of Survey attached hereto."
In this suit LSH seek indemnification from Gremillion and his insurer St. Paul Fire & Marine Insurance Company, in the event they are cast in judgment to Collins. In a separate suit, LSH seek damages from Gremillion for the pipeline servitude crossing the entire 175.8 acre tract. See Slocum v. St. Paul Fire & Marine Insurance Company, 317 So.2d 683 (La.App. 3 Cir. 1975, # 4933 and 5060).
The trial judge found no negligence on the part of Gremillion. We disagree, but affirm the dismissal of the third party claim on different grounds.
The recorded servitude did affect the 256 acre tract, and Gremillion certified that it did not. The servitude was recorded and had been discovered and properly excepted by another attorney examining titles for LeBlanc affecting adjacent and nearby lands. Two attorneys testified that attorneys are required to call attention to *680 the possibility that recorded servitudes might affect the described property.
We must determine whether this negligence was a legal cause of LSH's injury or damage.
An attorney is liable to his client for damages caused by the attorney's negligence in handling the client's business, providing the client proves by a preponderance of evidence that such negligence is the legal cause of the loss. Toomer v. Breaux, 146 So.2d 723 (La.App. 3 Cir. 1962) and cases therein cited.
Walker Jr. testified that he told LeBlanc of the pipeline. They went on nearby property when the clearing showed where the pipeline traversed. Additionally, LeBlanc had a plat showing the pipeline's location on the adjacent tract which he purchased shortly before this purchase was confected. Although the survey did not show the pipeline continued into the subject property, there was no way the pipeline could have avoided the subject property. LeBlanc was on notice that the pipeline continued through the 256 acre tract.
The trial judge found that LeBlanc had actual knowledge of the existence of the servitude, although he may have forgotten at the time of the purchase. We know of no law or jurisprudence that relieves a person for failure of memory. LeBlanc acted as agent for Slocum and Henderson and therefore his actual knowledge is chargeable to them. Culver v. Culver, 188 La. 716, 178 So. 252 (1938); Mayer v. Ford, 12 So.2d 618 (La.App. 1 Cir. 1943).
Accepting the trial court's finding that LeBlanc had actual knowledge and that Slocum and Henderson are chargeable with this knowledge, LSH failed in their burden to prove Gremillion's negligence was the legal cause of their loss. Toomer v. Breaux, supra. The legal cause of LSH's loss, was their purchasing the subject property with the knowledge that a pipeline servitude existed.
We will not reverse the trial court's factual determination that LeBlanc had actual knowledge at the time of the purchase. There is a reasonable basis in the record to support that holding. Canter v. Koehring Company, 283 So.2d 716 (La.1973).
For different reasons, we therefore affirm the trial court's judgment dismissing LSH's claim against Gremillion. Having found no liability on the part of Gremillion, we do not reach the issues presented by his third party demands against Daigre, McSween & McSween, a partnership, or McSween and Brook individually.

LSH'S Demand Against Walker, Jr., and Sr.
Walker Jr. purchased the tract from his father Walker, Sr. with full warranty of title and no exceptions. Walker, Sr. knew of the pipeline servitude because he granted the servitude to Humble. Walker, Jr. knew of the pipeline when he purchased the property. This was confirmed when he executed an agreement with Humble concerning that pipeline.
Walker, Jr. sold the tract to LSH with full warranty of title and no exceptions.
LSH third partied both Walker, Jr. and Sr. to recover whatever amount they may be cast to pay Collins. The trial court held that since LSH had an attorney examine the title prior to purchasing the property, they were chargeable with "constructive notice" of what appears on the public records. This was based on our prior decision dismissing LSH's third party suit against Humble on the peremptory exception of "no cause of action." Collins v. Slocum, 284 So.2d 98 (La.App. 3 Cir. 1973). We stated in that case that "all persons have constructive notice of the existence and contents of recorded instruments affecting immovable property. * * * The record reveals that the title *681 was examined by an attorney-at-law, and therefore, anyone building on the right of way servitude did so at his peril."
We distinguish that case. That suit was not in warranty, but was instead a suit in tort for Humble's negligence in failing to mark the pipeline. We do not agree that a title examination prior to purchase defeats the warranty action. The cases cited by Walkers [Martin v. Schwing Lumber & Shingle Co., 228 La. 175, 81 So.2d 852 (1955); Juneau v. Laborde, 219 La. 921, 54 So.2d 325 (1951); Board of Commissioners Lafourche Basin Levee District v. Elmer, 268 So.2d 274 (La.App. 4 Cir. 1972); Burt v. Valois, 144 So.2d 196 (La. App. 1 Cir. 1962); Dinwiddie v. Cox, 9 So.2d 68 (La.App. 2 Cir. 1942)] to support their contention that it does, do not address that issue. Instead, these cases deal with knowledge chargeable to a purchaser to defeat "good faith" acquisitive prescription.
When a sale is made with an exception to the warranty clause, "constructive knowledge" will not defeat the warranty action. Only actual knowledge will suffice. LSA-C.C. art. 2505; New Orleans & C.R.R. v. Jourdains Heirs, 34 La.Ann. 648 (1882); Citizens' Bank of La. v. Freitag, 37 La.Ann. 271 (1885); Peters v. Daniel, 19 So.2d 583 (La.App. 1 Cir. 1944). See also, 23 T.L.R. 154, 168. It would be illogical to hold that a warranty, without exceptions, would defeat the action in warranty when a warranty with an exception to the warranty, would not.
In this case LSH purchased with full warranty. LeBlanc's actual knowledge of the danger of eviction was chargeable to Slocum and Henderson. When a sale is made subject to express warranty, even actual knowledge by the purchaser, at the time of the purchase, of the danger of eviction will not defeat the warranty action. Actual knowledge will defeat the purchaser's right to recover damages, but not his right to recover the purchase price. LSA-C.C. art. 2506; Hall v. Nevill, 3 La. Ann. 326 (1848). See 23 T.L.R. 140, 148.
LSH have not sought to rescind the sale. The pipeline servitude is only a partial eviction. Therefore, LSH can only recover for the proportionate part from which they have been evicted. LSA-C.C. art. 2514.
LSH purchased 256 acres from Walker, Jr. at a price of $128,025. Collins' lot consisted of approximately 2.9 acres. Therefore, LSH is entitled to $1450.28 from Walker Jr. and Sr. The recovery against both Walkers is based on LSA-C.C. art. 2506. Walker, Jr.'s liability is based on his role as vendor, and Walker, Sr.'s comes by virtue of the subrogation of warranty against prior vendors. LSA-C.C. art. 2503; Hoggatt v. Halcomb, 250 So.2d 471 (La.App. 2 Cir. 1971).
We do not consider Walker, Jr.'s third party demand against Walker, Sr. There is a signed judgment disallowing this claim, and Walker, Jr. did not appeal or answer the appeal.
The trial court judgment allowing the intervention of Rapides Savings & Loan and rejecting LSH's third party demand against Gremillion and St. Paul Fire & Marine Insurance Company is affirmed.
The trial court judgment allowing Collins to rescind the sale and receive damages, in addition to all interest and insurance expenses associated with his loan is also affirmed. The judgment is amended however, to award Collins a total of $23,065.00 [to correct an error in calculation].
The judgment rejecting LSH's third party demand against Walker, Jr. and Walker, Sr. is reversed. Judgment is hereby rendered in favor of LSH and against Walker, Jr. and Walker, Sr., in solido, in the full sum of $1,450.28, with legal interest from date of judicial demand.
*682 Costs of this and the earlier appeal are to be paid three-fourths by defendants LSH, and one-fourth by third party defendants Walker, Jr. and Sr.
In part, affirmed; in part amended and affirmed; and in part, reversed and rendered.
FRUGÉ, J., concurs in decree.
FRUGÉ, Judge (concurring).
The majority opinion concludes that the third party defendant Gremillion was negligent in the preparation of a title opinion for the defendants LeBlanc, Slocum and Henderson. I respectfully disagree. The trial judge found no negligence on Gremillion's part. In the title opinion Gremillion stated:
"Our examination of the records indicate a number of rights-of-way and servitudes affecting this property which in no manner encroach upon the property above described and shown on the plat of survey attached hereto. . . ."
The trial judge concluded:
"This should have indicated to the purchasers that these rights-of-way existed and it was incumbent upon the purchasers to determine the exact location of the rights-of-way. An attorney only examines the public records and does not know where pipelines traverse property."
I agree with the ruling of the trial court and therefore would find no negligence on the part of Gremillion. Since the majority finds no liability on the part of Gremillion, I concur in the decree.
It is to be noted that the right-of-way granted to Humble for the pipeline in question was over the entire 256 acre tract originally purchased by LSH from Walker, Jr. There was no designation of where the pipeline would run. Although Humble did have servitude rights over the entire tract, had Humble recorded the actual position of this pipeline after it was built the problem in this suit may not have arisen. As no such duty to record now exists, see Collins v. Slocum, 284 So.2d 98 (La.App. 3rd Cir. 1973), perhaps the legislature should consider the requiring of such recordation.
I concur in the decree.

ON APPLICATION FOR REHEARING
MILLER, Judge.
Applications for rehearing have been filed by plaintiff Donald R. Collins; defendants, Gwin LeBlanc, A. Jerry Slocum, and J. Harrison Henderson, III; and third party defendant, Morgan W. Walker, Jr. We address ourselves to only a few specifications of error because most alleged errors were considered in the original opinion.
Defendant, LSH contend we erred in rendering judgment against them in solido for the full sum of $23,065.00.
Joint owners of immovable property are not subject to solidary judgment for recovery of the purchase price. A joint sale of land gives rise to only joint obligations of warranty. Suthon v. Laws, 127 La. 531, 53 So. 852 (1911); Schultz v. Ryan, 131 La. 78, 59 So. 21 (1912); Soule v. West, 185 La. 655, 170 So. 26 (1936); Hodges v. Long-Bell Petroleum Company, 240 La. 198, 121 So.2d 831 (1960). Therefore $4,000 of the $23,065 judgment (that part attributable to the purchase price) should have been rendered against LSH jointly rather than in solido. The $19,065 portion of the award in damages was properly rendered against LSH in solido.
We reject LSH's contention this case cannot properly be decided without Humble, because it would be prejudicial to decide the case without first determining Humble's limitations, rights, duties, liabilities and uses under the servitude. The pipeline goes directly under Collins' house. *683 He had been evicted. No matter what happens, Collins is entitled to recover in warranty without further delay. LSH has not been prejudiced.
The trial court found Gwin LeBlanc had actual knowledge of the pipeline, and we affirmed. We inadvertently stated he had actual knowledge of the servitude, which contained the prohibition against building above the servitude. No evidence was introduced to show he had knowledge of this prohibition which is a non-apparent servitude. However LSH's remedy was limited to the return of the proportional amount of the purchase price because they should have been placed on notice to investigate restrictions connected with the pipeline.
Walker, Jr. contends it is unfair to excuse Gremillion although he was found negligent, on finding LSH's actual knowledge of the pipeline barred recoveryand then require Walker to return the purchase price when LSH had knowledge. Gremillion was negligent under general tort principles (See Steel v. Aetna Life & Casualty, 304 So.2d 861 [La.App. 3 Cir. 1974]), and LSH were barred from recovery because of their contributory negligence. As to Walker, Jr., he was found liable under warranty against eviction as defined by the Civil Code. This is an entirely different action. The civil code and jurisprudence require Walker, Jr. to return the purchase price even though LSH had actual knowledge. Walker, Jr., cannot be heard to complain. He failed to except the servitude in the deed when he sold the property to LSH.
Our decree in this case is amended so that the $23,065 awarded Collins is against LeBlanc, Slocum, and Henderson jointly as to $4,000, and in solido as to $19,065.
As amended our original decree is reinstated. All applications for rehearing are denied.
Rehearings denied.